**HALLWOOD REALTY PARTNERS, L.P., Plaintiff–Appellant,**

**v.**

**GOTHAM PARTNERS, L.P.; Gotham Partners III, L.P.; Gotham Holdings II, L.L.C.; Private Management Group, Inc.; Interstate Properties;**

Steven Roth; Hallwood Investors, L.P.; Liberty Realty Partners, L.P. and EFO/Liberty, Inc., Defendants–Appellees.

Docket No. 01–7246.

United States Court of Appeals, Second Circuit.

Argued March 4, 2002.

Decided April 11, 2002.

Thomas J. McCormack; (Robert A. Schwinger, Beth D. Diamond, Gregory J. Kerr, Thomas Freedman, on the brief), Chadbourne & Parke, L.L.P., New York, NY; (Vivian Shevitz, South Salem, N.Y., on the brief), for Plaintiff–Appellant.

Robert J. Giuffra, Jr.; (David M.J. Rein, on the brief), Sullivan & Cromwell, New York, NY, for Defendants–Appellees Interstate Properties and Steven Roth.

Philip H. Schaeffer; (Karen M. Asner, K. Allison White, on the brief), White & Case, L.L.P., New York, NY, for Defendants–Appellees Gotham Partners, L.P.; Gotham Partners III, L.P.; and Gotham Holdings II, L.L.C.

Joseph C. Owens, Lewis, D'Amato, Brisbois & Bisgaard, L.L.P., Los Angeles, CA, for Defendant–Appellee, Private Management Group, Inc.

Douglas H. Flaum; (Albert Shemmy Mishaan, on the brief), Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for Defendants Appellees Hallwood Investors, L.P.; Liberty Realty Partners, L.P.; and EFO/Liberty, Inc.

Before CALABRESI and CABRANES, Circuit Judges, and PRESKA,* District Judge.

CALABRESI, Circuit Judge.

Appellant Hallwood Realty Partners, L.P. ("Hallwood") brought this action asserting a violation of § 13(d) of the Securities and Exchange Act, 15 U.S.C. § 78m(d). Specifically, Hallwood alleged that the defendants formed a group to purchase and amass Hallwood units for the purpose of effecting a take-over of Hallwood and substantially altering its business and operations, without disclosing their group, its activities, or its intentions in public filings, as required under § 13(d). Hallwood sought (i) various forms of injunctive relief; (ii) a declaratory judgment that the defendants, by forming a § 13(d) group, had become an "Acquiring Person" under the terms of Hallwood's "poison pill";[1] and (iii) an award of monetary damages. Hallwood also requested a jury trial.

The district court struck Hallwood's demand for a jury trial after holding that § 13(d) provides no cause of action for money damages and that Hallwood was not entitled to a jury trial on its injunctive and declaratory claims. Following a bench trial, the district court dismissed these equitable claims because it concluded that Hallwood had not proved the existence of a group of investors under § 13(d).

Hallwood appeals both decisions, arguing (1) that the district court improperly rejected circumstantial evidence in determining whether a § 13(d) group existed, and (2) that the court erred in denying Hallwood's jury demand. We affirm the judgment and order of the district court.

## BACKGROUND

Hallwood is a limited partnership that acquires, owns, and operates commercial real estate. Hallwood units are traded on the American Stock Exchange. The various defendants in this case[2] were purchasers of Hallwood units.

---

* The Honorable Loretta A. Preska, United States District Judge for the Southern District of New York, sitting by designation.

1. Hallwood has a rights plan, or "poison pill," that is triggered if any one unitholder, or group acting in concert, acquires beneficial ownership of more than fifteen percent of Hallwood units. When the rights plan is trig-gered, the value of the units is significantly diluted.

2. Defendants Gotham Partners, L.P., Gotham Partners III, L.P., and Gotham Holdings II, L.L.C. (collectively, "Gotham") are affiliated private investment funds. Defendant Private Management Group, Inc. ("PMG") is a California-based money management company.

The defendants began acquiring Hallwood units in the early to mid 1990s. Each individual defendant claims to have made an independent decision to purchase units, based on due diligence and a common understanding among knowledgeable investors that Hallwood units were undervalued.

Defendants Gotham Partners, L.P., Gotham Partners III, L.P., and Gotham Holdings II, L.L.C. (collectively, "Gotham") started buying Hallwood units in 1994. In December 1995, Gotham filed a Schedule 13D[3] with the Securities and Exchange Commission (the "SEC") in which it stated that it had acquired 5.05% of the outstanding Hallwood units "for investment purposes." It continued purchasing units (and updating its Schedule 13D) over the following ten months, amassing 14.82% of the units by October 1996. In June 1997, Gotham amended its filing to say that it was seeking to remove Hallwood's general partner. Soon after, Gotham sued Hallwood and certain of its affiliates, officers, and directors in the Delaware Chancery Court, alleging, *inter alia,* breaches of fiduciary duty and of Hallwood's partnership agreement.

Defendant Interstate began buying Hallwood units in mid 1995. In November 1998, Interstate filed a Schedule 13D disclosing that it had acquired 5.7% of the outstanding Hallwood units. Interstate filed amendments to its Schedule 13D on March 25, 1999 (7.0%), August 30, 1999

(8.0%), and July 28, 2000 (9.0%). At no time did it disclose any plan to act in concert with other unitholders to change or influence the control of Hallwood.

Defendant PMG started acquiring Hallwood units in 1992. By January 2000, PMG had amended its Schedule 13G[4] to disclose an aggregate holding of 6.5%. PMG consistently reported that it acquired these units "in the ordinary course of business and ... not ... for the purpose of ... changing or influencing the control of the issuer ... and ... not ... in connection with or as a participant in any transaction having such purpose or effect." Defendant EFO allegedly bought at least 2% of Hallwood's units. EFO filed no 13D or 13G schedules.

At trial, Hallwood put forward direct and circumstantial evidence supporting its allegations. It provided evidence of meetings and other communications among the defendants beginning in 1994–95 and continuing through 2000, as well as evidence that Hallwood was discussed in these communications. It demonstrated that the defendants each had purchased Hallwood units during the relevant period, and it emphasized in particular a "burst of purchases" by Gotham and Interstate starting in the same week. Hallwood submitted a magazine article that described similar tactics used by Gotham to take over another company.

---

Defendant Interstate Properties ("Interstate") is a New Jersey partnership that invests in the stock of public companies with substantial real estate assets. Defendant Steven Roth ("Roth") is a general partner of Interstate Properties. Defendant Liberty Realty Partners, L.P., is an investment entity created to invest in small-capitalization, publicly-traded real estate companies. EFO/Liberty, Inc. and Hallwood Investors, L.P., are entities affiliated with Liberty Realty Partners, LP (collectively, "EFO").

**3.** A Schedule 13D is the filing required under § 13(d).

**4.** A Schedule 13G is similar to a Schedule 13D, but it may be filed only by certain classes of purchasers and only if the purchasers have no intent to change or influence the issuer or to act in concert with others who so intend. *See* 17 C.F.R. § 240.13d 1(c) (1999).

Hallwood also had hired a private investigator who, disguised as a potential investor, had met with certain defendants and was allegedly told by them of a coordinated plan to gain control of Hallwood. Specifically, the investigator testified that Dennis Reiland, a representative of PMG, conveyed to him the existence of a Gotham-led group designed to take over Hallwood. The investigator submitted an audiotape of a conversation he had with Christopher Mahowald, a representative of EFO, and a copy of EFO'S "Investment Recommendation" with respect to Hallwood, which Mahowald had given him. The "Investment Recommendation," Hallwood argued, could be read to imply that EFO was part of a Gotham-led attempt (involving the Delaware litigation mentioned above), to take over Hallwood and to "realize value" (i.e., to liquidate, sell, or recapitalize the company). According to Hallwood, the recommendation could also be taken to indicate the involvement of both Interstate and Roth in the plan.

These allegations were contested at trial by the defendants. On February 23, 2001, the district court rendered an oral decision, concluding that Hallwood had failed to prove that a group, as contemplated by § 13(d), existed, and entering judgment, dismissing the plaintiff's claims.

## DISCUSSION

### I.

Hallwood first argues that the district court refused to credit circumstantial evidence in its determination that Hallwood had not proved the existence of a group for purposes of § 13(d). Hallwood contends that this was a legal error subject to *de novo* review.

■ In response to hostile corporate take-overs in the 1960s, Congress, in 1968, passed the Williams Act, of which § 13(d) is a part. *See* Act of July 29, 1968, Pub.L. No. 90–439, § 2, 82 Stat. 454, 454. Among other things, § 13(d) requires a group that has acquired, directly or indirectly, beneficial ownership of more than five percent of a class of registered equity securities, to file a 13D Schedule with the issuer, with the exchanges on which the security is traded, and with the SEC, disclosing, among other things, the identity of its members and the purpose of its acquisition. Section 13(d) applies to a group of persons or entities who "act .... for the purpose of acquiring, holding or disposing of securities...." 15 U.S.C. § 78m(d)(3). The agreement among these entities may be formal or informal, and need not be expressed in writing. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 124 (2d Cir. 2001); *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir.1982) (*"Wellman II"*). Under § 13(d), a court evaluating an allegation of the existence of a group must "determine whether there is sufficient direct or circumstantial evidence to support the inference of a formal or informal understanding between [the defendants]" for the purpose of acquiring, holding, or disposing of securities. *Wellman II*, 682 F.2d at 363. Whether the requisite agreement exists is a question of fact. *Morales*, 249 F.3d at 124.

■ Hallwood claims that the district court's decision that there was insufficient evidence to establish the existence of a § 13(d) group was faulty because of the court's "rejection of using circumstantial evidence to show a § 13(d) group and its insistence on having direct 'smoking gun' evidence that plainly is not required by law." Hallwood cites cases in which this court has held that the existence of a group may be proved through direct or circumstantial evidence, *id.; Wellman II*, 682 F.2d at 363, as well as cases establishing the variety of circumstantial indicia that support an inference of group activity for purposes of § 13(d). *See, e.g., Well-*

*man II*, 682 F.2d at 363–64 (listing as significant the presence of a common plan or goal, the solicitation of others to join the group, and the existence of communications between and among group members). Hallwood asserts that the court below refused to credit such circumstantial "factors," and that we therefore should vacate its decision and remand for new proceedings.

This claim is meritless. Nothing in the district court's oral ruling suggests that it failed to consider circumstantial evidence or that it refused to give weight to the factors listed by appellant and mentioned in prior caselaw. Indeed, Judge Kaplan expressly noted that prior relationships and trading patterns were relevant to a decision regarding the existence of a § 13(d) group. The court also specifically referenced most of the circumstantial evidence presented by Hallwood. Thus, in its oral ruling, the court mentioned evidence of discussions between the defendants, evidence of a viable exit strategy for the investment, and evidence regarding whether Gotham had a particular *modus operandi*. It observed in conclusion that "[t]he fact that I haven't referred to each and every tidbit [of the proof offered] shouldn't be taken as evidencing a failure to pay attention to it."

The district court demanded more than "simply ticking off factors, each of which . . . may well be relevant." It noted: "What one has to do instead or in addition, rather, is to draw back or focus on whether the inference of collusion really is justified in light of all the circumstances." The court did not, therefore, reject the use of circumstantial evidence; rather, it properly pointed out that a complex factual finding such as that required here cannot be reduced to a checklist.[5]

## II.

With regard to Hallwood's request for a jury trial based on its claim for damages under § 13(d), the district court observed:

Section 13 does not explicitly create a cause of action for damages. Courts repeatedly have held that no such right of recovery may be inferred under Section 13 in favor of shareholders who rely to their detriment on false or misleading statements contained in, or material omissions from, filings under that statute. While few cases address the availability of damages to issuers for Section 13 violations, they indicate uniformly that there is no such right to relief.

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, No. 00–CIV–1115, 2001 WL 46978, at *1 (S.D.N.Y. Jan.19, 2001) (footnote omitted). Accordingly, the court concluded that Hallwood had "no colorable claim for damages under Section 13 of the Exchange Act" and therefore no right to a jury. *Id.*

Hallwood contends that this ruling was in error, because a private cause of action for damages to issuers is implied under § 13(d).[6] This question is one of first impression for our court.

Over the years, the Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor. In 1964, in *J.I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct.

---

**5.** At the beginning of the trial, Judge Kaplan also said that he was aware of no "smoking gun" and that this was instead a "circumstantial case." Hallwood argues that this statement indicates that the court required a "smoking gun." It, of course, does no such thing, but is simply an acknowledgment that circumstantial evidence must, in this case, be considered.

**6.** Hallwood does not contest the district court's conclusion that it was not entitled to a jury trial on its equitable and declaratory claims.

1555, 12 L.Ed.2d 423 (1964), the Court held that the broad remedial purpose of § 14(a) of the Securities Exchange Act was sufficient to give rise to a private right of action for damages. This approach was narrowed a decade later in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), in which the Court set forth four factors to be considered in determining whether a private right of action is implicit in any given statute: (1) legislative intent, (2) the consistency of the remedy with the underlying purposes of the legislative scheme, (3) whether the plaintiff was a member of the class for whose benefit the statute was enacted, and (4) whether the cause of action is one traditionally relegated to state law. *Id.* at 78, 95 S.Ct. 2080. Later, in cases such as *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) and *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court focused the analysis on the single question of whether congressional intent to create a private cause of action can be found in the relevant statute.[7] *See also Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102–03, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991); *Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 432 (2d Cir.2002).

Courts in this circuit have consistently declined to imply a cause of action for shareholders under § 13(d). *See, e.g., Kamerman v. Steinberg*, 891 F.2d 424, 430 (2d Cir.1989) ("One complaining of a false or misleading statement in a Schedule 13D may seek damages only under Section 18(a) of the Act."); *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 960 (S.D.N.Y. 1983) (noting that "courts have consistent-

ly refused to imply private rights of action for damages under § 13(d)"), *aff'd*, 730 F.2d 910 (2d Cir.1984) (per curiam); *Schnell v. Schnall*, No. 80–CIV–2442, 1981 WL 1618, at *2 (S.D.N.Y. Mar.30, 1981); *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 926 (S.D.N.Y.1989); *Wellman v. Dickinson*, 497 F.Supp. 824, 835 (S.D.N.Y.1980) (*"Wellman I"*), *aff'd on other grounds*, 682 F.2d 355 (2d Cir.1982); *Myers v. Am. Leisure Time Enters.*, 402 F.Supp. 213, 214–15 (S.D.N.Y.1975).

Courts have identified various reasons for denying shareholders a private cause of action under § 13(d). First, the relevant legislative history reveals "an absence of legislative intent to imply a right of action under § 13(d)," particularly for money damages. *Sanders*, 582 F.Supp. at 960 (internal quotation marks omitted). Second, § 13(d) does not contain rights-creating language; it simply requires investors to file certain statements, *see id.*, and "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 289, 121 S.Ct. 1511 (quoting *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). Finally, courts have found significant the existence of an express remedy under § 18(a) of the Williams Act, available to those shareholders who can prove reliance on misleading filings. 15 U.S.C. § 78r(a); *see Sanders*, 582 F.Supp. at 960 (citing the presence of an express private remedy for damages under § 18(a) as a reason not to infer a cause of action for damages under § 13(d)); *Myers*, 402 F.Supp. at 214 (same); *see also Touche Ross*, 442 U.S. at 574, 99 S.Ct. 2479 (in holding that there is no private cause of

---

**7.** As this circuit has explained, the remaining *Cort* factors (other than congressional intent) now enter into the analysis only as possible indicia for legislative intent. *See Health Care Plan, Inc. v. Aetna Life Ins. Co.*, 966 F.2d 738, 740 (2d Cir.1992).

action under § 17(a) of the Williams Act, stating that "we are extremely reluctant to imply a cause of action . . . that is significantly broader that the remedy Congress chose to provide," particularly as "[t]here is evidence to support the view that § 18(a) was intended to provide the exclusive remedy for misstatements contained in any reports filed with the Commission"); *Olmsted,* 283 F.3d 429, 433 ("Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional.").

Hallwood attempts to distinguish these cases by noting, first, that they all involve damages claims by *shareholders,* not *issuers,* and, as such, can be viewed as having been premised on the existence of § 18(a), an explicit damages remedy that is available to shareholders but not to issuers. Second, and more significantly, Hallwood stresses that this circuit has expressly held that issuers have a private cause of action under § 13(d) for injunctive relief. *See GAF Corp. v. Milstein,* 453 F.2d 709, 720 (2d Cir.1971) (holding that the issuer has a private cause of action and standing to sue for injunctive relief). Hallwood then highlights the Supreme Court's statement that once an implied right of action is found, "we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 66, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *see also Salute v. Stratford Greens Garden Apartments,* 136 F.3d 293, 299 (2d Cir.1998); *Health Care Plan,* 966 F.2d at 742–43. According to Hallwood, the holdings of *GAF Corp.* and *Franklin* taken together require that, absent clear congressional indications to the contrary, there must be a damages remedy for issuers under § 13(d).

■ We hold today that there *are* sufficient congressional indications to the contrary, and that, therefore, there is no private damages remedy for issuers under § 13(d). *Cf. Salute,* 136 F.3d at 299 n. 4 (declining to imply a damages remedy under *Franklin* when doing so would frustrate the purposes of the statute). As in *Salute,* we find those indications in the purpose for which the relevant statute was enacted.

■ The aim of § 13(d) is to ensure that investors will be informed about purchases of large blocks of shares. *See* H.R.Rep. No. 90–1711, at 8 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2811, 2818 ("The purpose of section 13(d) is to require disclosure of information by persons who have acquired a substantial interest, or increased their interest in the equity securities of a company by a substantial amount, within a relatively short period of time."); *GAF Corp.,* 453 F.2d at 717 ("[T]he purpose of section 13(d) is to alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control. . . .").

In *GAF Corp.,* we found that this congressional purpose was furthered by providing issuers with the right to sue "to enforce [the] duties created by [the] statute," as the issuer "unquestionably is in the best position to enforce section § 13(d). The statute requires a copy of the statement to be sent by registered mail to the issuer . . . and the issuer, in the course of constantly monitoring transactions in its stock, better than anyone else will know when there has been a failure to file." 453 F.2d at 719. This court, however, expressly distinguished money damages from such injunctive relief, which furthers the object of § 13(d) by increasing honest disclosure for the benefit of investors without placing incumbent management in a stronger position than aspiring

control groups. We noted that we were recognizing the rights of issuers "seeking equitable or prophylactic relief—*not monetary damages*—to take the necessary steps to effectuate the purposes of section 13(d)." *Id.* at 720 n. 22 (emphasis added). In other words, in *GAF Corp.* we recognized that issuers have a private cause of action and standing to sue for injunctive relief because, *inter alia,* such relief increases the accurate information available to investors, while at the same time recognizing, in dicta, that monetary damages for issuers would not similarly benefit investors.[8]

Moreover, an implied cause of action for damages not only does not serve the same aim as a cause of action for injunctive relief, but it also may actually *frustrate* congressional purposes. The legislative history of the Williams Act, of which § 13(d) is a part, makes clear that the Act was intended to assist shareholders while at the same time remaining "evenhanded" in any struggle between the issuer and entity purchasing large quantities of stock. *See e.g., Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975) ("Congress expressly disclaimed an intention to provide a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts."); *GAF Corp.,* 453 F.2d at 717 n. 16 ("[It is] clear that the [Williams] Act

was designed for the benefit of investors and not to tip the balance of regulation in favor of management or in favor of the person seeking corporate control."). We think it manifest that a damages remedy granted to issuers is likely to "tip the balance" between the two sides, while the issuer's ability to sue for injunctive relief does not do anything of the kind.

In *Salute,* we held that once we have determined that there is an implied cause of action, the question becomes "whether the general rule that federal courts may award all appropriate relief should ... nevertheless yield where necessary to carry out the intent of Congress or to avoid frustrating the purposes of the statute involved." 136 F.3d at 299 (internal quotation marks and citation omitted). Thus the *Franklin* presumption in favor of the availability of all remedies is not absolute, and must not be applied irrespective of congressional intent and purposes. Because a damages remedy for issuers contravenes the congressional purposes underlying the statute of which § 13(d) is a part, the general rule that federal courts award all appropriate relief does not apply. *Cf. Transamerica,* 444 U.S. at 19–25, 100 S.Ct. 242 (holding that Congress intended an implied right of action for certain injunctive relief but not for damages under the Investment Advisors Act of 1940). Accordingly, we affirm the district court's striking of Hallwood's jury demand.[9]

---

**8.** Notably, four other circuits have followed this court's holding in *GAF Corp.* and recognized that issuers have a cause of action for injunctive relief, and none of these courts have to date granted issuers a cause of action for damages. *See Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1158 (9th Cir.1992); *Gearhart Indus., Inc. v. Smith Int'l, Inc.,* 741 F.2d 707, 714 (5th Cir.1984); *Ind. Nat'l. Corp. v. Rich,* 712 F.2d 1180, 1184 (7th Cir.1983); *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1224 (4th Cir.1980); *see also CNW Corp. v. Japonica Partners,* 874 F.2d 193 (3rd Cir. 1989) (implicitly assuming the existence of a cause of action for injunctive relief without

discussion); *Chromalloy Am. Corp. v. Sun Chemical Corp.,* 611 F.2d 240 (8th Cir.1979) (same); *Gen. Aircraft Corp. v. Lampert,* 556 F.2d 90, 94 n. 5 (1st Cir.1977) (explicitly assuming the existence of such a cause of action without deciding). *But see Liberty Nat'l Ins. Holding Co. v. Charter Co.,* 734 F.2d 545, 555–59 (11th Cir.1984) (holding that issuers have no cause of action for injunctive relief or damages under § 13(d)).

**9.** In declining to hold that issuers may obtain damages, we in no way intend to cast doubt on the continued validity of *GAF Corp.* with respect to injunctive relief. Notably, the Su-

## III.

We conclude that the district court properly considered circumstantial evidence in determining whether a 13(d) group existed. We also hold that the court was correct in concluding that 13(d) does not provide a damages remedy to issuers. Accordingly, we AFFIRM both the court's order of January 22, 2001, striking Hallwood's demand for a jury trial, and its February 28, 2001 judgment dismissing Hallwood's remaining claims for injunctive and declaratory relief.

preme Court has not sought to reconsider the existence of causes of action, such as the right to injunctive relief recognized in *GAF Corp.*, that were implied under the now dubious analysis of *Borak*. Cf. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378–79, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (on the effects of congressional reenactments of statutes following courts' findings of implied causes of action); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 698–99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (same).