**Robert M. GOLDBERG, Plaintiff,**

v.

**CABLEVISION SYSTEMS CORPORATION, a Delaware Corporation, Town Board of the Town of Oyster Bay, the legislative branch of the Town of Oyster Bay, a municipal corporation, and the Public Service Commission of the State of New York, an executive agency of the State of New York, Defendants.**

No. 01 CV 4223(ADS)(ETB).

United States District Court, E.D. New York.

Aug. 29, 2003.

Thomas J. Hillgardner, Esq., Jamaica, NY, for Plaintiff.

Satterlee, Stephens, Burke & Burke, LLP by Robert M. Callagy, Esq., Anne Berrill Carroll, Esq., New York City, for Defendant Cablevision Systems Corporation.

Office of the Town Attorney, Town of Oyster Bay by Marilyn Oshansky, Assistant Town Attorney, Donna B. Swanson, Assistant Town Attorney, Oyster Bay, NY, for Defendant Town Board of the Town of Oyster Bay.

Lawrence G. Malone, Esq., General Counsel by Jonathan D. Feinberg, Assistant Counsel, Carl Patka, Assistant Counsel, Albany, NY, for Defendant Public Service Commission of the State of New York.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises out of claims by Robert M. Goldberg ("Goldberg" or the "plaintiff") that Cablevision Systems Corporation ("Cablevision") violated the Cablevision Communications Policy Act of 1984 (the "Cable Act"), 47 U.S.C. § 521, et. seq., 42 U.S.C. § 1985, and the New York Public Service Law ("N.Y.Publ.Serv.L.") by refusing to air his programs on their public access channel until he signed an access user contract. Goldberg also claims that the Town board of the Town of Oyster Bay (the "Town Board") and the New York State Public Service Commission ("NYSPSC") violated 42 U.S.C. § 1983 by delegating to Cablevision the power to adopt rules and regulations for the use of its production facilities and its public, educational, and governmental channel capacity.

## I. BACKGROUND

The background of this case is incorporated in this Court's memorandum of decision and order dated March 23, 2002, familiarity with which is assumed. The relevant facts, which are uncontested, are restated below to resolve the present motions.

### A. Factual Background

#### 1. Regulatory Framework

■ Cable television operators, such as the defendant Cablevision, are regulated by the Cable Act, 47 U.S.C. § 521, et. seq.; state law, see N.Y. Pub. Serv. Law, Art. 11; and the Official Compilation of Codes, Rules, and Regulations of the State of New York, see 9 NYCRR pt. 595. To the extent that the state and federal statutes differ, the federal statutes control. See Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698–700, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984), Cable Television Ass'n of New York, Inc. v. Finneran, 954 F.2d 91, 97–98 (2d Cir.1992).

Pursuant to the Cable Act, any "governmental entity empowered by Federal, State, or local law to grant a franchise," 47 U.S.C. § 522(10), may provide a cable operator with the authorization to construct or operate a cable system, see 47 U.S.C. § 522(9) (defining franchise). Cable operators must comply with the terms of the resultant franchise agreement in addition to federal and state law.

The Cable Act permits franchising authorities, typically a local government or municipality, to require cable operators to provide public, educational, and governmental ("PEG") channel capacity on their systems. See 47 U.S.C. §§ 531(a); Denver Area Educ. Telecomms. Consortium, Inc. v. FCC, 518 U.S. 727, 734, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) (noting that local governments require cable system operators to set aside channels for PEG use in exchange for "permission to install cables under city streets and to use public rights-of-way"). The Cable Act also allows franchising authorities to require cable operators to establish rules and procedures for the use of the channel capacity designated for PEG programming. See 47 U.S.C. § 531(b). However, the Cable Act prohibits cable operators from exercising "any editorial control over any public, educational or governmental use of channel capacity provided pursuant to this section, except a cable operator may refuse to transmit any public access program or portion of a public access program which contains obscenity, indecency, or nudity." 47 U.S.C. § 531(e).

The NYSPSC, which is responsible for regulating the cable television industry in New York state, promulgates minimum standards that are incorporated by law into every franchise agreement. *See* N.Y. Pub. Serv. Law § 215(b); *Goldberg v. Cablevision Systems Corp.*, 261 F.3d 318, 320 (2d Cir.2001). Those standards include "provisions regarding access to, and facilities to make use of, channels for ... public service programs." N.Y. Pub. Serv. L. § 215(2)(b); *Goldberg*, 261 F.3d at 320.

State regulations provide that New York cable operators with a capacity of 21 or more channels must designate at least one full-time channel for public access and at least one full-time channel for educational and governmental use. *See* 9 NYCRR § 595.4(b)(1). The regulations define "public access channel" as a "channel designated for noncommercial use by the public on a first-come, first-served, nondiscriminatory basis." 9 NYCRR § 595.4(a)(1). Similar to federal law, the state regulations prohibit franchisees and municipalities from exercising "any editorial control over any public, educational or governmental use of channel capacity designated for PEG purposes." 9 NYCRR § 595.4(c)(8), (9). In addition, § 229(3) of the Public Service Law prohibits cable operators from barring or limiting "any program or class or type of program presented over a ... channel made available for public access." N.Y. Pub. Serv. Law § 229(3).

**2. The Franchise Agreement**

Cablevision has a Franchise Agreement ("Agreement") with the Town of Oyster Bay (the "Town") to provide cable television service to residents of the Town. Pursuant to this Agreement, which was approved by the NYSPSC, Cablevision must make available and activate two channels dedicated to PEG access. Under this Agreement, a PEG Access Channel is a "channel ... on which non-commercial PEG Access programming is cablecast." The agreement defines PEG access as "the right to public, educational and governmental access that Town residents, its schools, its libraries, as well as the Town government have to submit non-commercial programs to the Franchisee for cablecasting on PEG Access channels in accordance with rules established and administered by the FCC, NYSPSC and the Franchisee."

Pursuant to the Agreement, Cablevision is "responsible for developing, implementing, interpreting and enforcing rules for PEG Access Channel use which shall insure that PEG Access Channel(s) and PEG Access Equipment will be available on a first-come non-discriminatory basis." The Agreement directs Cablevision to comply with federal and state laws regarding PEG access. The terms and conditions of the Agreement are subject to federal and state law as well as regulations by the Federal Communications Commission and the NYSPSC.

**3. The First Public Access Contract**

Goldberg is a resident of Oyster Bay who offers independently produced television programming to be shown on the public access channel designated by the Agreement between Cablevision and the Town. During an unspecified period of time prior to April 1, 2001, the plaintiff and Cablevision entered into an Access User Contract ("First Access User Contract"). By signing the First Access User Contract, Goldberg agreed to abide by Cablevision's Access Rules; to reimburse the company for any damage he may cause to Cablevision's equipment and facilities; to reimburse or indemnify Cablevision for any liability that might arise out of the violation of the intellectual property rights of third parties; and to provide programs for cablecasting that do not include ob-

scene or indecent material or advertisements for a lottery.

### 4. The Second Access User Contract

According to the plaintiff, on an unspecified date prior to April 1, 2001, Cablevision demanded that Goldberg enter into a Second Access User Contract that was based on a revised set of access user rules, policies, procedures, and guidelines ("Second Access User Contract"). The Second Access User Contract provides, among other things, that public access programmers, such as the plaintiff, agree to abide by Cablevision's Access Rules, including the technical specifications set forth in the Rules. By signing the Second Access User Contract, the public access programmer warrants that his cablecast presentations do not contain obscene material, advertisements for a lottery, or commercial transactions and agrees to submit his program to Cablevision which may edit out any such prohibited material. The programmer assumes responsibility for all music synchronization rights for the music contained in his presentation and agrees to provide Cablevision with the title and composer of the musical arrangements incorporated in his presentation.

In addition, the programmer agrees to indemnify Cablevision for any liability, loss, or damage arising out of any material he supplies to Cablevision in connection with his use of Cablevision's public access channel and with regard to his use of Cablevision's production facilities. The programmer also agrees to indemnify Cablevision for any liability, loss, or damage it may suffer due to the programmer's violation of the intellectual property rights of third parties. The programmer assumes responsibility for the proper care of Cablevision's production facilities and agrees to repair or replace any Cablevision equipment he damages.

By signing the Second Access User Contract, the programmer also agrees to defend any action to which an indemnity applies and to release Cablevision from any legal action, claims, or demands the programmer "ever had, has and may have." The programmer agrees not to use the name "Cablevision" when publicizing the programs he intends to cablecast. The programmer also stipulates that his programs will be used only for public access cablecasting and "will not be exploited for profit, nonpolitical or commercial fundraising in any fashion." According to the Second Access User Contract, Cablevision must review any material a programmer uses to promote his presentation.

On March 29, 2001, Goldberg signed the Second Access User Contract and an Access User Application and submitted them to Cablevision so that he could cablecast one of his programs on Cablevision's public access channel. However, Goldberg added the following language to the Second Access User Contract and Access User Application: "Nothing is or has been agreed to that is not in accord with United States and New York State law or that would waive my rights that would otherwise apply."

On April 3, 2001, one Dianne Bennett ("Bennett"), an Access Supervisor at Cablevision, wrote Goldberg a letter stating that Cablevision was unable to accept his Second Access User Contract and Application because he had made "unilateral additions/deletions, amendments or comments to either/both of these documents." Bennett returned to Goldberg five of the eight Access User Contracts and Applications he had submitted. She also provided him with clean copies of both documents and invited him to submit them in accordance with Cablevision's Rules. Goldberg alleges that Cablevision refuses to cablecast any of his programs until he signs the

Second Access User Contract without adding his proposed language.

The amended complaint sets forth six causes of action. As a first cause of action, Goldberg claims that Cablevision has violated the Cable Act by refusing to cablecast his programs without a signed contract, because such conduct constitutes the type of "editorial control" prohibited by 47 U.S.C. § 531(e). In his second cause of action, Goldberg alleges that the same conduct violates N.Y. Pub. Serv. Law § 229(3). The third cause of action contends that Cablevision breached a contract with Goldberg by refusing to cablecast his programs. The fourth cause of action alleges that when the Town Board and NYSPSC delegated to cable operators the power to adopt rules and regulations for the use of public access television, they violated 42 U.S.C. § 1983, because they acted with deliberate indifference to the inherent and inevitable threat to the plaintiff's statutory right to be free from "editorial control" in connection with public access programming. In his fifth cause of action, Goldberg claims that Cablevision violated 42 U.S.C. § 1985, the conspiracy statute. The sixth cause of action seeks a declaration of the rights of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

**B. The Court's March 23, 2002 Decision**

In its prior decision, the Court decided the following three motions: (1) a motion by Goldberg for a preliminary injunction; (2) a cross-motion by the defendant Cablevision to dismiss the complaint as against Cablevision pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."); and (3) a cross-motion by the plaintiff to amend the complaint to add a Section 1985(3) cause of action pursuant to Rule 15(a) of the Fed. R.Civ.P. The Court denied injunctive relief to Goldberg and denied his request for leave to replead. The Court further dis-

missed the federal Cable Act claim as against Cablevision, concluding that Cablevision's refusal to cablecast Goldberg's programs without a signed and unaltered Second Access User Contract from Goldberg does not constitute an exercise of editorial control. However, because a Section 1983 claim against the Town and the NYSPSC and a request for relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, remained pending, the Court retained jurisdiction over the state-law causes of action against Cablevision.

Presently before the Court are three separate motions for summary judgment by defendants Cablevision, the Town, and NYSPSC and a cross-motion by the plaintiff to amend the complaint.

## II. DISCUSSION

### A. Motion for Summary Judgment

#### 1. Standard of Review

A motion for summary judgment under Fed.R.Civ.P. 56 should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the nonmovant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or de-

feat the motion through mere speculation or conjecture." *Id.* (internal quotations and citations omitted); *see Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried.").

**2. The Cable Act**

Goldberg claims that the NYPSC's regulations allowing the Town to permit Cablevision to administer the public access channel is a violation of his federal statutory right to public access under 47 U.S.C. § 531(e) and a basis for a claim of deprivation of federal rights under 42 U.S.C. § 1983. The Town and NYPSC argue that the plaintiff fails to allege a deprivation of a federal right under Section 1983 insofar as this Court found that Cablevision has not violated federal law. The Town and NYPSC further contend that they have not violated 47 U.S.C. § 531(b), which allows a franchising authority to regulate the use of a public access channel. In response, the plaintiff asks this Court to revisit its prior conclusion that the acts complained of did not violate the "editorial control" prohibition of the Cable Act, 47 U.S.C. § 531(e). The plaintiff also asks this Court to review its conclusion that 47 U.S.C. § 531(b) authorizes the cable operator to adopt rules and procedures for the use of the public access channel. The plaintiff contends that the law of the case doctrine should not bar this Court from revisiting these issues.

The law of the case doctrine " 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states of the same case.' " *Professor Diane Sank v. The City University of New York,* No. 94–0253, 2003 U.S. Dist. LEXIS 5471, (S.D.N.Y. Apr. 4, 2003) (citing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). "While a court may sometimes review an earlier ruling, nevertheless, because there is a strong policy favoring finality the court exercises its underlying power to review earlier rulings sparing." *North River Ins. Co. v. Philadelphia Reins. Corp.,* 63 F.3d 160, 165 (2d Cir.1995) (citations and inter-

nal quotations omitted). The major reasons justifying reexamination are " 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Zhejiang Tongxiang Import & Import Corp. V. Asia Bank, N.A.,* No. 98 Civ. 8288, 2003 WL 174230, *2 (S.D.N.Y. Jan. 23, 2003) (quoting *DiLaura v. Power Authority of NY,* 982 F.2d 73, 76 (2d Cir. 1992)).

The plaintiff argues that this Court's prior holding that the refusal of Cablevision to cablecast shows until the programmer signs an Second Access User Contract does not constitute the exercise of editorial control is clearly erroneous. Relying solely on a tortured interpretation of the statute, Goldberg contends that the Cable Act's legislative history suggests that the prohibition of editorial control set forth in Section 531(e) encompasses both content control and "supervision over who gets to use the channel capacity."

█ On the contrary, as determined in the prior decision, although Section 531(e) prohibits a cable operator from exercising any "editorial control" as to programing within the PEG categories, it is well-established that "cable operators may enforce the boundaries of the categories they are obliged to offer ... without violating section 531(e)." *Time Warner Cable v. Bloomberg, L.P.,* 118 F.3d 917, 928 (2d Cir.1997). Section 531(b) of the Cable Act specifically permits franchising authorities, such as the Town, to require cable operators to establish rules and procedures for the use of channel capacity designated for PEG programming. *See* 47 U.S.C. § 531(b). Congress therefore must have expected the cable operators to implement and enforce those regulations. *See id.* at 928. As in the March 23, 2002 decision, this Court again finds that the Cablevision's Second Access User Contract requirement, imposed pursuant to a lawful delegation of authority from the Town, is permissible. Goldberg offers no new facts or decisions to support his proposition that there was clear error of law. Indeed, his argument is based on neither logic nor legislative history. Thus, the plaintiff is not relieved of the consequences of the law of the case doctrine and is not permitted to relitigate these issues.

█ Having determined that the complained of acts do not constitute a violation of Section 531(e), the Court finds that the plaintiff's Section 1983 claim against NYPSC and the Town must fail. Section 1983 does not, in and of itself, create any substantive rights but rather provides a remedy for violations of Constitutional rights or laws of the United States. *See Zigmund v. Foster,* 205 F.3d 1327, 2000 WL 19088, at *1–2 (2d Cir.2000); *Posr v. N.Y.S. Court Officer Sergeant Vincent Killackey,* 2003 WL 21716321, at *3 (S.D.N.Y. July 25, 2003) (citing *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979)). To maintain a cause of action under Section 1983, a plaintiff must establish the following: (1) the conduct complained of was committed by a person acting under color of state law, and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Id.* (citing *Dwyer v. Regan,* 777 F.2d 825, 828 (2d Cir.1985)). Because NYPSC and the Town have not violated the Cable Act or any other laws of the United States or the Constitution the Court grants summary judgment to NYPSC and the Town as to the plaintiff's fourth cause of action.

█ In his opposition papers, the plaintiff attempts to argue that Section 531(b) prohibits the imposition of an Access User Contract and that this prohibition is an implied term of the franchise agreement between the Town and Cablevision. As

such, the plaintiff contends that Cablevision's Access User Contract is a breach of the franchise agreement. The plaintiff further asserts that he has a private cause of action to enforce 47 U.S.C. § 531(b) to ensure that the cable operator may not infringe on the public access user's speech rights and that Cablevision breached its obligation to Goldberg as a third-party beneficiary of the franchise agreement between the Town and Cablevision. This argument is wholly without merit.

The Supreme Court has articulated the following four factors that should be considered in determining whether Congress intended to create a private remedy: "(1) legislative intent; (2) the consistency of the remedy with the underlying purposes; (3) whether the plaintiff was a member of the class for whose benefit the statute was enacted; and (4) whether the cause of action is one traditionally relegated to state law." *Hallwood v. Gotham Partners, L.P.*, 286 F.3d 613, 619 (2d Cir.2002) (citing *J.I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)). While courts look to all four factors, the primary inquiry is whether Congress intended to create a private right of action. *Id.* The Supreme Court has cautioned against judicial legislating through "engrafting a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Id.* (quoting *California v. Sierra Club*, 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)).

In support of his argument that 47 U.S.C. § 531(b) provides a private right of action, Goldberg cites to *Missouri Knights of the Ku Klux Klan*, 723 F.Supp. 1347, 1353 (W.D.Mo.1989), and *McClellan v. Cablevision of Connecticut, Inc.*, 149 F.3d 161, 166 (2d Cir.1998). The plaintiff's reliance on these cases is misplaced as they involved a private right of action for editorial control under Section 531(e), and does not involve Section 531(b). Furthermore,

the Court finds that Goldberg has failed to set forth any authority establishing that Congress intended to create a private right of action under Section 531(b). This section merely authorizes the franchising authority to require rules and procedures for the use of channel capacity designated for PEG programming. *See* 47 U.S.C. § 531(b); *Goldberg*, 261 F.3d at 321. As such, the Court rejects the plaintiff's contention that he is entitled to relief under 47 U.S.C. § 531(b).

### 3. The Declaratory Judgment Act

■ The plaintiff also requests relief against Cablevision pursuant to the Declaratory Judgment Act, 22 U.S.C. § 2201. However, "[t]he Declaratory Judgment Act does not expand the jurisdiction of the federal courts." *Chapel Farm Estates, Inc. V. Moerdler*, No. 01 Civ. 3601, 2003 WL 21998964, at *8 (S.D.N.Y. Aug. 22, 2003) (citing *Cable Television Ass'n of N.Y., Inc. v. Finneran*, 954 F.2d 91, 94 (2d Cir.1992)). Because the Act does not confer subject matter jurisdiction, the plaintiff must have an independent basis for jurisdiction. As all the federal claims must be dismissed, the Court lacks jurisdiction to grant relief pursuant to the Declaratory Judgment Act.

### 4. State Claims

All that remains are the plaintiff's causes of action for breach of contract and his claim that the defendants violated New York Public Service Law § 229(3). Because his federal claims must be dismissed, this Court declines to exercise supplemental jurisdiction over these claims. *See Jinks v. Richland County*, —— U.S. ——, ——, 123 S.Ct. 1667, 1669, 155 L.Ed.2d 631 (2003); *see also* 28 U.S.C. § 1367(c); *Bailey v. The City of New York*, No. 98 Civ. 1812, 2003 WL 21031972, at *10 (S.D.N.Y. May 2, 2003) (citing *In re Merrill Lynch*

*Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir.1998)). Thus, to the extent that this Court declines to exercise supplemental jurisdiction over these remaining claims, Cablevision's motion for summary judgment is also granted, dismissing the state claims without prejudice.

## B. Goldberg's Motion for Leave to File an Amended Complaint

 The plaintiff moves to amend his amended complaint to add First and Fourteenth Amendment violations as an additional basis for his claim made pursuant to Section 1983 and to substitute the Commission's Chairman for the Commission. A motion to amend is governed by Rule 15(a) of the Fed.R.Civ.P., which states that leave to amend "shall be freely given when justice so requires." Only undue delay, bad faith, futility, or prejudice to the nonmoving party may serve as a basis for denying leave to amend. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The decision to grant or deny a motion to amend rests within the sound discretion of the district court. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995).

 If an amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 160 F.Supp.2d 657, 666 (S.D.N.Y. 2001). Thus, an amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.,* No. 96–1829, 2001 WL 1286989, at *5 (S.D.N.Y. Oct. 24, 2001) (quoting *Jones v. New York Div. of Mili-*

*tary & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999)).

 Here, the Court finds that the amendment to the complaint would be futile as the plaintiff fails to cite to any authority showing that the rules and procedures for the use of the public access channel infringe his First Amendment right to freedom of speech. The plaintiff concedes that the NYPSC's rules and procedures allowing the Town to permit Cablevision to administer the public access channel are content neutral regulations. Content neutral regulations confer benefits or impose burdens on speech without reference to the ideas or views. *See Time Warner Cable v. City of New York,* 943 F.Supp. 1357, 1392 (S.D.N.Y.1996) (citations omitted).

 The Supreme Court has held that content-neutral cable regulations are subject to intermediate scrutiny. *Turner Broad. Sys., Inc. v. FCC,* 520 U.S. 180, 190, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997). "A content-neutral regulation will be sustained under the First Amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Id.* The Court agrees with NYPSC that its rules and procedures advance important governmental interests in that they provide municipalities with flexibility by giving them the option of allowing a cable operator to administer public access. Further, these rules allow cable systems to be tailored to the needs of the local communities. *See* House Report No. 98–934; 1984 U.S.C.C.A.N. at 4661, 4663, 4665, 4667 (1984). Moreover, these procedures have only a minimal incidental effect on speech. As a result, the plaintiff fails to allege a claim for a First Amendment violation. In addition, although Goldberg also moves to add a

Fourteenth Amendment violation, his papers provide no basis for such a claim. Accordingly, his motion for leave to file a second amended complaint is denied as futile.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the three separate motions for summary judgment to dismiss the complaint in its entirety by the defendants are **GRANTED**; and it is further

**ORDERED**, that the plaintiff's cross-motion to file an amended complaint is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED**.