**Donna HARVEY, individually and as Personal Representative of Richard D. Harvey, Plaintiff,**

v.

**COUNTY OF WARD; Vern Erck, individually and in his official capacity as Ward County Sheriff; Penny Erickson, individually and in her official capacity as Administrator of the Ward County Jail, Defendants.**

No. A1–03–135.

United States District Court, D. North Dakota, Northwestern Division.

Jan. 20, 2005.

Mark Vincent Larson, Larson Law Firm, P.C., Minot, ND, for Plaintiff.

Richard H. McGee, McGee Hankla Backes & Dobrovolny PC, Minot, ND, Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion for Summary Judgment filed on October 1, 2004. For the following reasons, the motion is granted.

## I. *BACKGROUND*

The plaintiff, Donna Harvey, and Richard Harvey were married in 1998. According to Donna Harvey, Richard Harvey attempted suicide at the age of 17 and suffered a severe head injury in 1989 resulting in memory loss, difficulty comprehending things, and seizures. *See* Deposition of Donna Harvey, pp. 12, 13, 42. Donna Harvey stated her husband had been committed to a local hospital for mental health issues on October 9, 2001, because he had overdosed on his medications from ankle surgery and was hallucinating. Richard Harvey remained at the psychiatric ward until October 16, 2001. *See* Deposition of Donna Harvey, p. 20. Donna Harvey obtained a protection order on October 15, 2001, because of her husband's mental instability. *See* Deposition of Donna Harvey, p. 22. A commitment hearing was held on October 16, 2001. Richard Harvey was not committed, but he agreed to seek outpatient assistance. *See* Deposition of Donna Harvey, p. 21.

On October 18, 2001, Richard Harvey was arrested for violating the protection order and was incarcerated at the Ward County Jail. At the time Harvey was booked in for incarceration, Officer Virginia Just initiated a medical screening questionnaire. (Docket No. 12, Exhibit A). The questionnaire had two parts. The first part consisted of the booking officer's observations, and the second part was a list of questions the booking officer asks the inmate. Richard Harvey was combative at the time the questionnaire was started, and Officer Just was unable to complete the second section. At a later date, Officer Greg Johnson completed the questionnaire. The "officer observations" section of the questionnaire indicates that Harvey was under the influence of alcohol and that in the view of the officer, Harvey's behavior did not suggest a risk of suicide. The second portion of the questionnaire indicates that Harvey was taking three prescribed medications: hydrocodone, amitriptyline, and florinal. Harvey also responded that he had recently been hospitalized or had seen a medical or psychiatric doctor at "Trinity 3–C" for an "eval." When asked the last time he considered suicide, Harvey answered "Never." When asked whether he was considering suicide at the present time, Harvey answered "No." Harvey also stated he had foot surgery on October 5, 2001.

On October 23, 2001, Harvey asked one of the officers ("Travis") if he would call "Trinity Hospital for me and see if I can admit myself to Psychiatry Ward on my own as soon as possible." (Docket No. 19, Exhibit D). The officer responded, "Provided you are on Medicare/Medicaid you may admit yourself at the Trinity emergency room upon your release (According to the information I received)."

During his incarceration, Richard Harvey met with social worker Bruce Anderson on November 8, November 15, December 6, and December 20, 2001. Anderson's notes from each session contain the same conclusion that "Richard was functioning well in all spheres, with no stated intentions of harm to self or others." (Docket No. 12, Exhibit B).

On November 13, 2001, Correctional Officer Julie Pettys completed the following report:

This morning at approximately 0740 hours, I went into Inmate Harvey's room to give him his morning medications. He put them all in his mouth and swallowed, then took a drink of water. I took a step away from the door and then went back into his room. He had his head down and his hand close to his mouth. I could see one pill in his hand at this point. I said to him, "did you take all of your pills." He shook his head yes, with his hand up, and motioned that he was having trouble getting the pills down. When I left the first time it looked as though he had taken them and he didn't show any sign of problems taking them. Inmate Harvey may be trying to save up some of his medications to take at a later time.

(Docket No. 19, Exhibit D).

In an undated, hand written note, Officer Deryl Martin recorded the following information regarding Harvey:

Mark,

Dr. Hart refused to refill Harvey's pain med (Hydrocodone) today. I got his Amytriplyine filled; he also can get Naproxen filled at N.W. Pharmacy if he decided he wants it as PA Weston ordered a script to be filled when we call them to fill it.

Harvey had a court appearance today. Laura told us his wife informed him she wants a divorce. She feels we should keep an eye on him. He's been OK on our shift and spends a lot of time w/Dejarlais in his cell—seems to be coping. He does have a temper though!

Deryl

(Docket No. 19, Exhibit B).

In an affidavit, dated November 12, 2004, Donna Harvey states:

I received a phone call from a Ward County jailer requesting that medicines be brought to my husband. The jailer told me that he knew my husband's mind was not right. I told the jailer that he was going to kill himself and felt he should be watched carefully.

(Docket No 22). The affidavit does not identify the jailer with whom Donna Harvey spoke nor does it identify when this conversation took place. In her deposition taken on June 29, 2004, Donna Harvey said:

She [the jail employee] was calling because Rick wanted his medication, wanted me to bring it down, and I told her no, that had just gotten out of the psych ward, he had medications on him. If he needed any, he needed to be taken to a doctor. And she asked me what he was in the psych ward for and I told her.

See Deposition of Donna Harvey, p. 45.

On December 20, 2001, physical therapist Reed Argent, prescribed Harvey a theraband device used for exercising his ankle. Argent describes the theraband as "an elastic material used to provide resistance to increase the effectiveness of exercise." (Docket No. 20). Argent also states that "[b]ecause the Theraband device would be considered contraband, I provided the Theraband directly to the jailer who accompanied Mr. Harvey to his appointment and not to Mr. Harvey." Harvey was instructed to use the theraband twice a day for approximately 15 minutes.

As previously noted, Richard Harvey was seen by a social worker on December

20, 2001, and exhibited no suicidal ideations. However, on December 21, 2001, Harvey attempted suicide by hanging himself in his cell. Harvey apparently used either the theraband and/or a torn blanket as a noose. Harvey was taken by ambulance to Trinity Medical Center where he remained a patient until December 26, 2001, when his family elected to remove him from life support.

Donna Harvey commenced this lawsuit in December 2003 as the personal representative of Richard Harvey and on her own behalf. She sets forth six claims: (1) negligence, (2) violations of 42 U.S.C. § 1983, (3) violations of the North Dakota Constitution, (4) wrongful death, (5) survivorship, and (6) loss of consortium.

## II. *STANDARD OF REVIEW*

It is well-established that summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Clark v. Kellogg Co.,* 205 F.3d 1079, 1082 (8th Cir.2000). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376 (8th Cir.1996).

The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e); *Krein v. DBA Corp.,* 327 F.3d 723, 726 (8th Cir.2003). A mere trace of evidence supporting the non-movant's position is insufficient. A non-movant must present more than a scintilla of evidence and must present specific facts to create a genuine issue of material fact for trial. *F.D.I.C. v. Bell,* 106 F.3d 258, 263 (8th Cir.1997). The facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *LEGAL DISCUSSION*

Count II of Donna Harvey's complaint sets forth two different claims under 42 U.S.C. § 1983:(1) a deliberate indifference claim as to Ward County Sheriff Vern Erck and Ward County Jail Administrator Penny Erickson, and (2) a deliberate indifference claim for failure to train against Ward County, Ward County Sheriff Vern Erck and Ward County Jail Administrator Penny Erickson.

### A. *INDIVIDUAL LIABILITY OF ERCK AND ERICKSON*

▬ The Defendants contend that the 42 U.S.C. § 1983 claim against Ward County Sheriff Vern Erck and Ward County Jail Administrator Penny Erickson in their individual capacities should be dismissed.[1] The Defendants assert that Erck

---

1. The Plaintiff sued Sheriff Vern Erck and Jail Administrator Penny Erickson in both their official and individual capacities. A 42

U.S.C. § 1983 action against an employee in his or her official capacity is deemed to be a suit against the employer only, which in this

and Erickson are entitled to qualified immunity because they had no reason to believe Harvey posed a known suicide risk. The defense of qualified immunity is only available to government employees sued in their individual capacity. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.1999). The issue of qualified immunity is a question of law for the court, rather than the jury, to decide. *Littrell v. Franklin*, 388 F.3d 578, 584–585 (8th Cir. 2004).

■ "Qualified immunity shields governmental officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir.1998); *accord Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law." *Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994). "But if there is a genuine dispute concerning the predicate facts material to the qualified immunity issue, there can be no summary judgment." *Id.* The Supreme Court has generously construed qualified immunity protection to shield "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992).

■ The law of our circuit is clear. Courts are to employ a two-part inquiry to determine whether a lawsuit against a public official can proceed in the face of the official's assertion of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Coleman v. Parkman*, 349 F.3d 534, 537–538 (8th Cir.2003) (describing qualified immunity inquiry as a two-part test); *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (same). This inquiry must be undertaken in the "proper sequence" and courts are to first consider whether "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272. The "existence or nonexistence of a constitutional right" is, therefore, the threshold question. *Id.* The second step of the qualified immunity analysis requires courts to ask whether the right was clearly established. This is a fact-intensive inquiry. "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir.1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ As to the first step of the qualified immunity analysis, the critical question is whether the facts demonstrate that the conduct of Ward County Sheriff Vern Erck or Ward County Jail Administrator Penny Erickson violated Harvey's constitutional rights. Harvey contends that officers Erck and Erickson violated Richard Harvey's right to be free from officials acting with deliberate indifference to a known risk of suicide.

■ "The Eighth Amendment prohibits officials from acting with deliberate indifference towards an inmate's substantial suicide risk, and the Fourteenth Amendment extends at least as much pro-

case is Ward County. The Court will address the merits of the Plaintiff's 42 U.S.C. § 1983

claim against Ward County in section B of this order.

tection to pre-trial detainees." *Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir.2003) (internal citations omitted). "A prison official may be held liable under the Eighth Amendment for deliberate indifference only if he or she (1) knows that the inmate faces 'a substantial risk of serious harm' and (2) 'fail[s] to take reasonable measures' to abate that risk." *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). It is not enough to show the risk was obvious. *Coleman v. Parkman*, 349 F.3d 534, 540 (8th Cir.2003). "A prison official is not liable under the Fourteenth Amendment unless the official knows of facts evidencing a substantial suicide risk *and* the official actually infers the prisoner presents a substantial suicide risk." *Id.* "[A] plaintiff can provide knowledge through circumstantial evidence." *Id.* "To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir.2000).

 More important, it is also well-established that "a supervisory official could not be held liable for any other person's misconduct absent any 'sufficient personal involvement' or 'tacit authorization by him of the conduct complained of.'" *Williams v. Kelso*, 201 F.3d 1060, 1067 (8th Cir.2000) (quoting *Randle v. Parker*, 48 F.3d 301, 303 (8th Cir.1995)).

[I]t is undisputed that "[s]upervisors are not liable for [E]ighth [A]mendment claims brought under section 1983 on a respondeat superior theory." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.

1989) (citation omitted). Supervisors can incur liability for cruel and unusual punishment in two ways: they can "be liable for their personal involvement in a constitutional violation," *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir.1990), or " 'when their corrective inaction amounts to "deliberate indifference" to or "tacit authorization" of the violative practices,'" *Howard*, 887 F.2d at 137 (quoting *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir.1988)). *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir.1993).

Thus, the Court must determine what Erck or Erickson *knew* of Harvey's potential risk of suicide. Donna Harvey relies primarily on three pieces of evidence (1) her statement that she spoke with someone at the jail about Harvey's suicidal tendencies, (2) a note written by Deryl Martin, and (3) a report filed by Julie Pettys in an attempt to establish the requisite knowledge of Erck and Erickson. However, Harvey has failed to show that Erck or Erickson were aware of these conversations or documents. Donna Harvey's general allegations as to what the "officials" or "jailers" failed to notice or failed to provide is not evidence which establishes that either Erck or Erickson "knew of facts evidencing a substantial suicide risk." *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir.2003). It is not sufficient to speculate as to what an unnamed official should have known. Instead, the Plaintiff must show that Erck or Erickson had personal knowledge of Harvey being a suicide risk. Donna Harvey has arguably set forth facts to show that other individuals/jailers may have observed activity which may have led them to a believe that Harvey posed a suicide risk.[2] However, that is insufficient

---

2. As previously noted, other Ward County correctional officers who had direct contact with Richard Harvey were not named as defendants. Specifically, jailers Deryl Martin, Larry Hubbard, Tawna Grubb, Glennis Knud-

svig, Virginia Just, Greg Johnson, Bill Dokken, Mark Miller, and Julie Pettys, who have been identified in the record as jailers who had contact with Richard Harvey while he

as a matter of law to establish culpability on the part of Erck or Erickson.

 Nor can Donna Harvey attempt to impute the knowledge of other jail personnel to either Erck or Erickson to establish that they knew Harvey was a suicide risk. As the Eighth Circuit has made clear, the "knowledge" component of a deliberate indifference claim is unique to each official, and unless a supervisor is personally involved in or tacitly authorizes an employee's conduct, a supervisory official cannot be held liable for any other person's misconduct. *Williams v. Kelso,* 201 F.3d 1060, 1067 (8th Cir.2000) (quoting *Randle v. Parker,* 48 F.3d 301, 303 (8th Cir.1995)). Donna Harvey has failed to allege or show that Erck or Erickson were personally involved or tacitly authorized the conduct of any employee which would render them liable for another jailer's misconduct.

After a careful review of the entire record, the Court finds that Donna Harvey has failed to establish that either Erck or Erickson knew of facts evidencing Harvey's substantial suicide risk.[3] The Court finds, as a matter of law, that both Erck and Erickson are entitled to qualified immunity. There are no genuine issue of material fact to be resolved at trial concerning the claims asserted against Erck and Erickson in their individual capacities. The evidence reveals that these individual defendants did not know Harvey posed a suicide risk. The Plaintiff has wholly failed to establish that these named defendants acted with deliberate indifference.[4] As a result of this inquiry, the Court need not engage in the second step of the qualified immunity analysis.

### B. *WARD COUNTY*

 The Plaintiff has also alleged a violation of 42 U.S.C. § 1983 for failure to train by Ward County, Ward County Sheriff Vern Erck in his official capacity, and Ward County Jail Administrator Penny Erickson in her official capacity. Harvey asserts that Ward County has failed to train its employees in (1) handling inmates who constitute a danger to themselves, (2) observing the activities of inmates to prevent them from harming other inmates, and (3) questioning inmates with respect to suicidal tendencies. Harvey relies upon the opinion of Dr. Dale K. Sechrest, an expert witness, who opines that the Ward County Jail's suicide prevention policy was in violation of several standards adopted by the American Correctional Association ("ACA"). Harvey complains that jail personnel failed to conclude that Harvey was a suicide risk. Harvey further asserts that a properly trained correctional officer would have known that December 21, 2001, was a "crisis date" because it was Harvey's wedding anniversary.

The Defendants contend that the 42 U.S.C. § 1983 claim against Ward County, Ward County Sheriff Vern Erck, and Ward County Jail Administrator Penny

---

was in custody, were not sued in their individual capacities.

**3.** The Court expresses no opinion as to whether the conduct of other Ward County correctional officers may have amounted to deliberate indifference because they were not named as parties in this lawsuit. The Court also expresses no opinion as to whether the conduct of Erck, Erickson, or any other Ward County employee amounted to negligence, gross negligence, or willful, wanton or reckless conduct.

**4.** The Court also notes that the Plaintiff's expert witness, Dr. Dale K. Sechrest, failed to implicate either defendant Erck or Erickson in his report. In his affidavit of October 28, 2004, (Docket No. 19), Dr. Sechrest stated that "jailers who incarcerated Richard Harvey failed to protect his constitutional rights...." However, his report only arguably implicates jailers Miller, Martin, Grubb, Hubbard, and Pettys.

Erickson should be dismissed because the Plaintiff has failed to establish Harvey's suicide was a result of an official policy or custom of Ward County.

A governmental entity may only be held liable under 42 U.S.C. § 1983 for constitutional violations which result from a policy or custom of the governmental entity. *Turney v. Waterbury*, 375 F.3d 756, 761–762 (8th Cir.2004); *see also Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For purposes of claims brought pursuant to 42 U.S.C. § 1983, defendants sued in their official capacity are not "persons," but instead the action is treated as one against the governmental entity itself. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, Donna Harvey's "failure to train" claims are effectively claims against Ward County.

"A failure to properly train employees is one way in which an entity can exhibit deliberate indifference toward the rights of others." 375 F.3d 756, 762. "Only where a [governmental entity's] failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a ... 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A plaintiff may also be able to show a governmental entity was deliberately indifferent by establishing " 'that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [county] can reasonably be said to have been deliberately indifferent to the need.' " *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir.1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). To adequately set forth a "policy or custom," Donna Harvey must show that Ward County's failure to train its employees evidences a deliberate indifference to inmates and such failure was the moving force behind the constitutional violation. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The record establishes that Ward County had developed and implemented policies and procedures for inmate suicide prevention. The policies and procedures of the Ward County Jail include a "Suicide Prevention and Intervention" policy. The policy sets forth a list of factors to identify potentially suicidal inmates:

Strong indicators:
1. Recent attempts or history of suicide attempts;
2. Suicide threats and/or specific plan;
3. Writing a suicide note and/or a will, putting personal affairs in order.

Secondary indicators:
1. Overly emotional response to incarceration;
2. Crying or tearful;
3. Sudden change in behavior;
4. Experience of a loss (loved one, job, material possession);
5. Receipt of unexpected legal or personal news;
6. Feelings of despair, hopelessness, helplessness, depression, exhaustion;
7. Agitation, tension, anxiety;
8. Guilt, shame, embarrassment;
9. Rage, anger, hostility, revenge;
10. Alcohol and/or drug withdrawal.

High Risk Groups:
1. First time juvenile offenders;
2. First time sexual assault offenders;

3. Persons experiencing homophobic reactions (excessive fear of homosexuals and/or homosexual feelings).

(Docket No. 19, Exhibit E, Policies and Procedures Ward County Jail, Minot North Dakota, Suicide Prevention and Intervention, No. 3.03–1, p. 1).

The policy also sets forth the procedure for identification and screening of inmates:

1. Upon admission to the facility, the booking officer will complete a health screening from which includes asking the arrestee if he/she has a history of suicide attempts. A positive response and/or unusual behavior are immediately brought to the Supervisor's attention.

2. Exceptions include inmates unable to complete the process due to their severe intoxication, or inmates who refuse to partake in the process. Inmates unable to complete the screening process should be observed closely and temporarily housed on first floor and check on more frequently than the hourly check required on all inmates.

3. Intoxicated inmates should be screened as soon as intoxication subsides.

4. Inmates who refuse to participate in the screen process should be asked to sign the screening form indicating their refusal, or in the alternative, the booking officer should make the appropriate notation on the form.

5. Outside sources may also be used to identify a suicidal inmate:
 a. Arresting or transporting officer's statement to any departmental staff member;
 b. Telephone call from outside the facility which could provide information concerning an inmate's previous psychological history (i.e. family, friends, outside agencies and other inmates).

(Docket No. 19, Exhibit E, Policies and Procedures Ward County Jail, Minot North Dakota, Suicide Prevention and Intervention, No. 3–03–1, p. 2). The policy requires all new officers to complete suicide prevention and intervention training. In addition, on-going training in the implementation of suicide prevention and intervention is required for all staff. Further, the record reveals that the correctional officers received at least two hours of suicide prevention training and that some officers had received as much at eight hours.[5]

As the Eighth Circuit has held, a county's policy cannot be both an effort to prevent suicides and, at the same time, deliberately indifferent to suicides. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir.1998) (citing *Rellergert v. Cape Girardeau County*, 924 F.2d 794, 797)(8th Cir.1991). Just as in *Liebe* and *Rellergert*, Ward County implemented its suicide prevention policy out of concern that inmates not commit suicide. The policy appears reasonable and certainly comprised an effort to prevent suicides, rather than a deliberate indifference to the possibility of suicides. Thus, the Court finds that Ward County has recognized the need to train its employees on the potential suicidal risks of inmates.

The Court also finds that Donna Harvey has failed to present evidence to establish

---

5. The Plaintiff submitted the "Employee Profiles" of eight county employees: Penny Erickson, Glennis Knudsvig, Larry R. Hubbard, Larry M. Hubbard, Tawna Grubb, Deryl Martin, Laura Forbes, and Greg Johnson. The Plaintiff submitted evidence that other individuals (Virginia Just, Greg Johnson, and Julie Pettys) were presumably employed by Ward County, but no training records were received for these individuals. The record does not reveal whether this is the entire staff of the Ward County Jail.

that "the need for more or different training [was] so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the [County] ... can reasonably be said to have been deliberately indifferent." *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir.1998). Donna Harvey contends that the Eighth Circuit case of *Yellow Horse v. Pennington County*, 225 F.3d 923 (8th Cir.2000), supports her assertion that the County's suicide prevention policy and training is insufficient.

In *Yellow Horse*, the Eighth Circuit found the suicide prevention policy of Pennington County to be sufficient.

The undisputed facts show that: (1) before officers are released to work on their own, they are required to complete training courses which include suicide prevention; (2) at the time of the suicide, in September 1994, Pennington County Jail was accredited by the American Correctional Association, which requires jails to have a suicide intervention policy; and (3) in July 1994, the county held a training session at the jail regarding suicide prevention. The county's suicide prevention policy provided that during a new inmate's intake procedure, the inmate was to be screened for possible suicide indicators such as drug or alcohol abuse, mental illness, or other strange behavior. Inmates who were already in jail and subsequently became suicidal could also be placed on suicide watch by an officer. Only a supervisor could remove an inmate from suicide watch, and before doing so, the supervisor would interview the inmate and review the inmate's records to determine if he had been eating, socializing, etc. Correctional officers on duty were to check on an inmate on suicide watch every thirty minutes. Officers were trained to note significant events such as deaths in the family, divorces, and unfavorable court rulings which might trigger suicidal tendencies in inmates. The

policy was reviewed annually by the officers, and also periodically reviewed by prison medical staff.

*Yellow Horse v. Pennington County*, 225 F.3d 923, 928–29 (8th Cir.2000). Harvey contends that because the Ward County policy does not contain any of the factors the Eighth Circuit relied upon to relieve Pennington County of liability, Ward County's training was inadequate.

The fact the Ward County jail is not accredited by the ACA is not sufficient to show the County was on notice that its suicide prevention policy was inadequate, nor does the assertion that the policy has not been updated or reviewed since 1997. According to Jail Administrator Penny Erickson, the suicide prevention policy had changed since the early 1990s when two suicides occurred at the jail. *See* Deposition of Erickson, pp. 14–16. The training records submitted to the Court show that all jail staff referred to had received at least two hours of training. As to Donna Harvey's assertions that the Ward County jail has not been inspected annually as required by state law, that medical records of inmates were kept in separate files, and that inmates were not asked enough specific questions about personal information, these facts do not tend to establish that it was obvious that the jail staff was in need of more or different training regarding suicide prevention. The Court acknowledges that such evidence may establish negligence for purposes of the state law claims; however, it does not establish deliberate indifference toward the rights of others. Finally, Harvey's assertion that the jail staff failed to respond to Harvey's requests for medical services is negated by the numerous appointments Harvey attended while he was in custody. (Docket No. 19, Exhibit D).

The Court is not without sympathy for Donna Harvey. It is clear from Harvey's affidavit and her deposition that she had

great affection for her husband and hoped they would be able to put their marital difficulties behind them. However, the fact that Ward County's policies and practices may need significant improvement does not rise to the level of establishing that the County acted with deliberate indifference and violated the constitutional rights of Richard Harvey. The United States Supreme Court and the Eighth Circuit Court of Appeals have generously construed qualified immunity protection to government officials. The conduct of certain Ward County jailers may certainly equate with negligence, or at least create a genuine issue of material fact as to the existence of negligence. Such facts, however, do not create genuine issues of material fact as to whether the conduct amounts to deliberate indifference on the part of Ward County, Sheriff Vern Erck, or Jail Administrator Penny Erickson. The record is devoid of evidence to establish deliberate indifference on the part of the named defendants.

After carefully reviewing the entire record, depositions, exhibits, and all other evidence presented, the Court finds that the Plaintiff has failed to establish that Ward County was deliberately indifferent in training its employees. The Court finds that there are no genuine issues of material fact as to the civil rights claims and that the named defendants are entitled to judgment as a matter of law. Therefore, the 42 U.S.C. § 1983 claims against Ward County, Sheriff Vern Erck in his official capacity, and Jail Administrator Penny Erickson in her official capacity shall be dismissed.

## C. REMAINING STATE LAW CLAIMS

Under 28 U.S.C. § 1367, in any civil action in which a district court has original jurisdiction, it shall also have supplemental jurisdiction over all other claims so related to the claims in the original jurisdiction that form part of the same case or controversy. Once claims over which a district court has original jurisdiction are dismissed, it is left to the court's discretion whether to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

The Eighth Circuit has repeatedly said that "when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity." *Gregoire v. Class,* 236 F.3d 413, 419 (8th Cir. 2000); *ACLU v. City of Florissant,* 186 F.3d 1095, 1098–99 (8th Cir.1999). The Eighth Circuit has also said that "the judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues whenever possible." *Gregoire v. Class,* 236 F.3d 413, 419 (8th Cir.2000); *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990).

The Court finds the above decisions warrant allowing the North Dakota state courts the opportunity to decide the remaining state law claims. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the remaining state law claims.[6]

---

**6.** 28 U.S.C. § 1367(d) provides:

The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

The United States Supreme Court in *Jinks v. Richland County,* 538 U.S. 456, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003), recently held that the provision of 28 U.S.C. § 1367(d), which tolls state statutes of limitations while an original lawsuit is pending in federal

## IV. CONCLUSION

The Defendant's Motion for Summary Judgment is **GRANTED.** (Docket No. 12). The Plaintiff's claims under 42 U.S.C. § 1983 are **DISMISSED** with prejudice. The Plaintiff's remaining state law claims are **DISMISSED** without prejudice. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

court, applies to claims against local governmental entities. Thus, Harvey's state law claims are not barred by the applicable statute of limitations.