# JINKS *v.* RICHLAND COUNTY, SOUTH CAROLINA, ET AL.

No. 02–258.   Argued March 5, 2003—Decided April 22, 2003

Scalia, J., delivered the opinion for a unanimous court. Souter, J., filed a concurring opinion, *post*, p. 467.

*Robert S. Peck* argued the cause for petitioner. With him on the briefs were *James Mixon Griffin* and *Bradford P. Simpson.*

*Jeffrey A. Lamken* argued the cause for the United States as intervenor. On the briefs were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Clement, Malcolm L. Stewart, Mark B. Stern,* and *Alisa B. Klein.*

*Andrew F. Lindemann* argued the cause for respondent Richland County. With him on the brief were *William H. Davidson II* and *David L. Morrison.**

---

*\*Barbara Arnwine* and *Thomas J. Henderson* filed a brief for the Lawyers' Committee for Civil Rights Under Law as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Alabama et al. by *William H. Pryor, Jr.,* Attorney General of Alabama, *Nathan A. Forrester,* Solicitor General, *Carter G. Phillips,* and *Gene C. Schaerr,* and by the Attorneys General for their respective States as follows: *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Thurbert E. Baker* of Georgia, *Mark J. Bennett* of Hawaii, *Steve Carter* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Mike Moore* of

JUSTICE SCALIA delivered the opinion of the Court.

The Supreme Court of South Carolina dismissed petitioner's lawsuit against Richland County (hereinafter respondent) as time barred. In doing so it held that 28 U. S. C. § 1367(d), which required the state statute of limitations to be tolled for the period during which petitioner's cause of action had previously been pending in federal court, is unconstitutional as applied to lawsuits brought against a State's political subdivisions. The issue before us is the validity of that constitutional determination.

## I

## A

When a federal district court has original jurisdiction over a civil cause of action, § 1367 determines whether it may exercise supplemental jurisdiction over other claims that do not independently come within its jurisdiction, but that form part of the same Article III "case or controversy." Section 1367(a) provides:

> "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such

Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *David Samson* of New Jersey, *Wayne Stenehjem* of North Dakota, *W. A. Drew Edmondson* of Oklahoma, *Charlie Condon* of South Carolina, *Paul G. Summers* of Tennessee, *Greg Abbott* of Texas, *Mark L. Shurtleff* of Utah, and *Jerry W. Kilgore* of Virginia; and for the Council of State Governments et al. by *Richard Ruda* and *James I. Crowley*.

supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

As the introductory clause suggests, not every claim within the same "case or controversy" as the claim within the federal courts' original jurisdiction will be decided by the federal court; §§ 1367(b) and (c) describe situations in which a federal court may or must decline to exercise supplemental jurisdiction. Section 1367(c), for example, states:

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

"(1) the claim raises a novel or complex issue of State law,

"(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

"(3) the district court has dismissed all claims over which it has original jurisdiction, or

"(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Thus, some claims asserted under § 1367(a) will be dismissed because the district court declines to exercise jurisdiction over them and, if they are to be pursued, must be refiled in state court. To prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court, § 1367(d) provides a tolling rule that must be applied by state courts:

"The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

## B

On October 14, 1994, Carl H. Jinks was arrested and jailed for failure to pay child support. Four days later, while confined at respondent's detention center, he died of complications associated with alcohol withdrawal. In 1996, within the applicable statute of limitations, petitioner Susan Jinks, Carl Jinks's widow, brought an action in the United States District Court for the District of South Carolina against respondent, its detention center director, and its detention center physician. She asserted a cause of action under Rev. Stat. § 1979, 42 U. S. C. § 1983, and also supplemental claims for wrongful death and survival under the South Carolina Tort Claims Act. See S. C. Code Ann. § 15–78–10 *et seq.* (West Supp. 2002). On November 20, 1997, the District Court granted the defendants' motion for summary judgment on the § 1983 claim, and two weeks later issued an order declining to exercise jurisdiction over the remaining state-law claims, dismissing them without prejudice pursuant to 28 U. S. C. § 1367(c)(3).

On December 18, 1997, petitioner filed her wrongful-death and survival claims in state court. After the jury returned a verdict of $80,000 against respondent on the wrongful-death claim, respondent appealed to the South Carolina Supreme Court, which reversed on the ground that petitioner's state-law claims were time barred. Although they would not have been time barred under § 1367(d)'s tolling rule, the State Supreme Court held that § 1367(d) was unconstitutional as applied to claims brought in state court against a State's political subdivisions, because it "interferes with the State's sovereign authority to establish the extent to which its political subdivisions are subject to suit." 349 S. C. 298, 304, 563 S. E. 2d 104, 107 (2002).

We granted certiorari, 537 U. S. 972 (2002).

## II

### A

Respondent and its *amici* first contend that § 1367(d) is facially invalid because it exceeds the enumerated powers of Congress. We disagree. Although the Constitution does not expressly empower Congress to toll limitations periods for state-law claims brought in state court, it does give Congress the authority "[t]o make all Laws which shall be necessary and proper for carrying into Execution [Congress's Article I, § 8,] Powers and all other Powers vested by this Constitution in the Government of the United States . . . ." Art. I, § 8, cl. 18. The enactment of § 1367(d) was not the first time Congress prescribed the alteration of a state-law limitations period; [1] nor is this the first case in which we have ruled on its authority to do so. In *Stewart* v. *Kahn*, 11 Wall.

---

[1] See, *e. g.*, Soldiers' and Sailors' Civil Relief Act of 1940, 50 U. S. C. App. § 525 ("The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court . . . by or against any person in military service"); 42 U. S. C. § 9658(a)(1) ("In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute"); 11 U. S. C. § 108(c) ("Except as provided in section 524 of this title, if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim").

493 (1871), we upheld as constitutional a federal statute that tolled limitations periods for state-law civil and criminal cases for the time during which actions could not be prosecuted because of the Civil War. We reasoned that this law was both necessary and proper to carrying into effect the Federal Government's war powers, because it "remed[ied] the evils" that had arisen from the war. "It would be a strange result if those in rebellion, by protracting the conflict, could thus rid themselves of their debts, and Congress, which had the power to wage war and suppress the insurrection, had no power to remedy such an evil, which is one of its consequences." *Id.*, at 507.

Of course § 1367(d) has nothing to do with the war power. We agree with petitioner and intervenor United States, however, that § 1367(d) is necessary and proper for carrying into execution Congress's power "[t]o constitute Tribunals inferior to the supreme Court," U. S. Const., Art. I, § 8, cl. 9, and to assure that those tribunals may fairly and efficiently exercise "[t]he judicial Power of the United States," Art. III, § 1. As to "necessity": The federal courts can assuredly exist and function in the absence of § 1367(d), but we long ago rejected the view that the Necessary and Proper Clause demands that an Act of Congress be "'*absolutely* necessary'" to the exercise of an enumerated power. See *McCulloch* v. *Maryland*, 4 Wheat. 316, 414–415 (1819). Rather, it suffices that § 1367(d) is "conducive to the due administration of justice" in federal court,[2] and is "plainly adapted" to that end, *id.*, at 417, 421. Section 1367(d) is conducive to the administration of justice because it provides an alternative to the unsatisfactory options that federal judges faced when they decided whether to retain jurisdiction over supplemental state-law claims that might be time barred in state court. In the pre-§ 1367(d) world, they had three basic choices:

---

[2] This was Chief Justice Marshall's description in *McCulloch* of why—by way of example—legislation punishing perjury in the federal courts is valid under the Necessary and Proper Clause. See 4 Wheat., at 417.

First, they could condition dismissal of the state-law claim on the defendant's waiver of any statute-of-limitations defense in state court. See, *e. g.*, *Duckworth* v. *Franzen*, 780 F. 2d 645, 657 (CA7 1985); *Financial General Bankshares, Inc.* v. *Metzger*, 680 F. 2d 768, 778 (CADC 1982). That waiver could be refused, however, in which case one of the remaining two choices would have to be pursued. Second, they could retain jurisdiction over the state-law claim even though it would more appropriately be heard in state court. See *Newman* v. *Burgin*, 930 F. 2d 955, 963–964 (CA1 1991) (collecting cases). That would produce an obvious frustration of statutory policy. And third, they could dismiss the state-law claim but allow the plaintiff to reopen the federal case if the state court later held the claim to be time barred. See, *e. g.*, *Rheaume* v. *Texas Dept. of Public Safety*, 666 F. 2d 925, 932 (CA5 1982). That was obviously inefficient. By providing a straightforward tolling rule in place of this regime, § 1367(d) unquestionably promotes fair and efficient operation of the federal courts and is therefore conducive to the administration of justice.

And it is conducive to the administration of justice for another reason: It eliminates a serious impediment to access to the federal courts on the part of plaintiffs pursuing federal- and state-law claims that "derive from a common nucleus of operative fact," *Mine Workers* v. *Gibbs*, 383 U. S. 715, 725 (1966). Prior to enactment of § 1367(d), they had the following unattractive options: (1) They could file a single federal-court action, which would run the risk that the federal court would dismiss the state-law claims after the limitations period had expired; (2) they could file a single state-law action, which would abandon their right to a federal forum; (3) they could file separate, timely actions in federal and state court and ask that the state-court litigation be stayed pending resolution of the federal case, which would increase litigation costs with no guarantee that the state court would oblige. Section 1367(d) replaces this selection of inadequate choices

with the assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court.

We are also persuaded, and respondent does not deny, that § 1367(d) is "plainly adapted" to the power of Congress to establish the lower federal courts and provide for the fair and efficient exercise of their Article III powers. There is no suggestion by either of the parties that Congress enacted § 1367(d) as a "pretext" for "the accomplishment of objects not entrusted to the [federal] government," *McCulloch, supra*, at 423, nor is the connection between § 1367(d) and Congress's authority over the federal courts so attenuated as to undermine the enumeration of powers set forth in Article I, § 8, cf. *United States* v. *Lopez*, 514 U. S. 549, 567–568 (1995); *United States* v. *Morrison*, 529 U. S. 598, 615 (2000).

Respondent and its *amici* further contend, however, that § 1367(d) is not a "proper" exercise of Congress's Article I powers because it violates principles of state sovereignty. See *Printz* v. *United States*, 521 U. S. 898, 923–924 (1997). Respondent views § 1367(d)'s tolling rule as a regulation of state-court "procedure," and contends that Congress may not, consistent with the Constitution, prescribe procedural rules for state courts' adjudication of purely state-law claims. See, *e. g.*, Bellia, Federal Regulation of State Court Procedures, 110 Yale L. J. 947 (2001); *Congressional Authority to Require State Courts to Use Certain Procedures in Products Liability Cases*, 13 Op. Off. Legal Counsel 372, 373–374 (1989) (stating that "potential constitutional questions" arise when Congress "attempts to prescribe directly the state court procedures to be followed in products liability cases"). Assuming for the sake of argument that a principled dichotomy can be drawn, for purposes of determining whether an Act of Congress is "proper," between federal laws that regulate state-court "procedure" and laws that change the "substance" of state-law rights of action, we do not think that

state-law limitations periods fall into the category of "procedure" immune from congressional regulation. Respondent's reliance on *Sun Oil Co.* v. *Wortman*, 486 U. S. 717 (1988), which held a state statute of limitations to be "procedural" for purposes of the Full Faith and Credit Clause, is misplaced. As we noted in that very case, the meaning of "'substance'" and "'procedure'" in a particular context is "largely determined by the purposes for which the dichotomy is drawn." *Id.*, at 726. For purposes of *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), for example, statutes of limitations are treated as substantive. *Guaranty Trust Co.* v. *York*, 326 U. S. 99 (1945). *Stewart* v. *Kahn*, 11 Wall., at 506–507, provides ample support for the proposition that—if the substance-procedure dichotomy posited by respondent is valid—the tolling of limitations periods falls on the "substantive" side of the line. To sustain § 1367(d) in this case, we need not (and do not) hold that Congress has unlimited power to regulate practice and procedure in state courts.

We therefore reject respondent's contention that § 1367(d) is facially unconstitutional.

### B

Respondent next maintains that § 1367(d) should not be interpreted to apply to claims brought against a State's political subdivisions. We find this contention also to be without merit.

The South Carolina Tort Claims Act, S. C. Code Ann. § 15–78–10 *et seq.* (West Supp. 2002), confers upon respondent an immunity from tort liability for any claim brought more than two years after the injury was or should have been discovered. In respondent's view, § 1367(d)'s extension of the time period in which a State's political subdivisions may be sued constitutes an impermissible abrogation of "sovereign immunity." That is not so. Although we have held that Congress lacks authority under Article I to override a *State's* immunity from suit in its own courts, see *Alden* v. *Maine*,

527 U. S. 706 (1999), it may subject a *municipality* to suit in state court if that is done pursuant to a valid exercise of its enumerated powers, see *id.*, at 756. Section 1367(d) tolls the limitations period with respect to *state-law* causes of action brought against municipalities, but we see no reason why that represents a greater intrusion on "state sovereignty" than the undisputed power of Congress to override state-law immunity when subjecting a municipality to suit under a federal cause of action. In either case, a State's authority to set the conditions upon which its political subdivisions are subject to suit in its own courts must yield to the enactments of Congress. This is not an encroachment on "state sovereignty," but merely the consequence of those cases (which respondent does not ask us to overrule) which hold that municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit.

Nor do we see any reason to construe § 1367(d) not to apply to claims brought against a State's political subdivisions absent an "unmistakably clear" statement of the statute's applicability to such claims. Although we held in *Raygor* v. *Regents of Univ. of Minn.*, 534 U. S. 533 (2002), that § 1367(d) does not apply to claims filed in federal court against *States* but subsequently dismissed on sovereign immunity grounds, we did so to avoid interpreting the statute in a manner that would raise "serious constitutional doubt" in light of our decisions protecting a *State's* sovereign immunity from congressional abrogation, *id.*, at 543. As we have just explained, however, no such constitutional doubt arises from holding that petitioner's claim against respondent—which is not a State, but a political subdivision of a State—falls under the definition of *"any claim* asserted under subsection (a)." § 1367(d) (emphasis added). In any event, the idea that an "unmistakably clear" statement is required before an Act of Congress may expose a *local* government to liability cannot possibly be reconciled with our holding in *Monell* v. *New*

*York City Dept. of Social Servs.,* 436 U. S. 658 (1978), that municipalities are subject to suit as "persons" under § 1983.

\*      \*      \*

The judgment of the Supreme Court of South Carolina is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER, concurring.

In joining the Court today, I do not signal any change of opinion from my dissent in *Alden* v. *Maine,* 527 U. S. 706, 760 (1999).