Jamie GARAY, Plaintiff,

v.

U.S. BANCORP, Defendant.

No. 02 CV 4007(ADS)(WDW).

United States District Court,
E.D. New York.

Feb. 3, 2004.

Jamie Garay, Stonybrook, NY, pro se Plaintiff.

Dorsey & Whitney LLP, New York, NY, David C. Singer, Esq., Joseph B. Shumofsky, Esq., Of Counsel, Attorneys for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On July 15, 2002, Jamie Garay, ("Garay" or the "plaintiff") commenced this action against U.S. Bancorp (the "defendant"), asserting seven causes of action, three claims relying on criminal violations and four state common law claims: (1) aiding and abetting identity theft; (2) aiding and abetting mail fraud; (3) obstructing justice; (4) gross negligence; (5) failure to provide due diligence; (6) aiding and abetting in a conspiracy to commit conversion; and (7) invasion of privacy. Pending before the Court is the defendant's motion for summary judgment dismissing the complaint on the ground that the three claims asserting criminal violations do not afford a private right of action. In addition, the defendant asserts that there is no legal basis to support the plaintiff's four state common law claims.

## I. BACKGROUND

The following facts are undisputed unless otherwise indicated. In 2001, an imposter stole Garay's identification information, including her name, date of birth, social security number, and address. Based on the stolen information, the imposter applied for a credit card from U.S. Bank National Association ND ("U.S. Bank"), a subsidiary of U.S. Bancorp.

In that same year, U.S. Bank received, via the internet, an application for a WorldPerks Visa business credit card from a company called the Ultimate Roots Inc. The application was transferred to a U.S. Bank data entry form. The defendant explains that, upon receipt of a business credit card application, it was U.S. Bank's standard procedure to attempt to verify certain information associated with the business listed on the application, including the owner and the address of the business, by consulting a Dun & Bradstreet Report. The defendant contends that no Dun & Bradstreet Report existed for Ultimate Roots Inc.

According to the defendant, to determine whether to issue a credit card pursuant to a business card application, U.S.

Bank's underwriting practices focused on the verification of certain information relating to the authorizing officer indicated in the application because business cards function very similarly to consumer credit cards. The authorizing officer was identified as the plaintiff. The application also listed: (a) 16 Hallock Meadow Drive, Stonybrook, New York as the authorizing officer's address; (b) October 13, 1958 as the authorizing officer's date of birth; and (c) the authorizing officer with Garay's social security number. Because the computer program U.S. Bank used at that time to initially process internet-based credit card applications deleted leading zeros from the social security number, the leading zero in the authorizing officer's social security did not appear on the application. Nevertheless, U.S. Bank received a nine digit social security number for the authorizing officer and used the entire nine digit number to process the application.

The defendant further contends that, to verify the information relating to the authorizing officer listed on the application, U.S. Bank obtained an electronic copy of an Equifax Consumer Credit Report in the name of "Jamie Garay." By comparing the information listed on the application with the information listed in the Equifax Consumer Credit Report, U.S. Bank verified the information relating to the authorizing officer, which included the authorizing officer's name, address, date of birth and social security number. U.S. Bank also reviewed the credit history of the authorizing officer contained in the Equifax Consumer Credit Report. In sum, the defendant contends that it followed all the regular procedures to investigate a new account.

In response, the plaintiff contends that neither U.S. Bank nor U.S. Bankcorp ever tried to obtain a Dun & Bradstreet report about Ultimate Roots Inc. In addition, the plaintiff disputes the defendant's assertion that the name "Jamie Garay" was linked to the authorizing officer. The plaintiff further contends that the defendant failed to verify the address, date of birth, and social security number of the authorizing officer.

On an unspecified date, U.S. Bank issued a WorldPerks Visa business credit card with a credit limit in the amount of $20,000 to the imposter in the name of "Jamie Garay" for Ultimate Roots Inc. Sixteen transactions were executed with use of the credit card, totaling in the amount of $20,098.05. On or about March 19, 2001, the account became delinquent.

On or about July 24, 2001, the plaintiff informed U.S. Bank that she did not open the account and that the account was fraudulent. Soon thereafter, U.S. Bank opened an internal fraud case to investigate the facts and circumstances surrounding the application for and use of the credit card. U.S. Bank reversed all of the charges associated with the account, including the purchase charges, finance charges, late payment fees and over-the-limit fees, causing U.S. Bank to absorb the loss of more than a sum of $20,000. Pursuant to its policy, if an account is delinquent for more than 150 days, the defendant reports it to a credit reporting agency. However, because the account here was less than 150 days past due, U.S. Bank never reported any delinquency to any credit reporting agency.

Sometime after July 24, 2001, Garay contacted U.S. Bank seeking documents related to the account. Soon thereafter, at the plaintiff's request, U.S. Bank sent to her eight account statements.

On or about August 2, 2003, the defendant issued a credit card to her home address but failed to follow the fraud alert on her credit file to personally contact her at a specific telephone number before issuing a credit card. The plaintiff contends

that the defendant's failure to follow the fraud alert is further evidence that the it fails to follow procedures to investigate a new account.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

When deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir.1995). In the case of a *pro se* party, the court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, *pro se* status "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

Notably, the plaintiff mistakenly sets forth in her memorandum of law in opposition to the instant motion the standard for a motion to dismiss instead of a motion for summary judgment. In this regard, the Court also notes that the defendant included with its motion a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" which informed Garay that failure to oppose the motion may result in a dismissal of the complaint. The defendant also affixed to the Notice a copy of Fed. R.Civ.P. 56. The plaintiff's submission of her counterstatement to the defendant's 56.1 Statement indicates that she was sufficiently apprised of the procedure and its consequences.

### B. The Claim for Aiding and Abetting Identity Theft, 18 U.S.C. § 1028

■ Pursuant to the Identity Theft and Assumption Deterrence Act of 1998, 18 U.S.C. § 1028, Garay asserts that the defendant aided and abetted in committing identity theft by issuing a credit card in her name to the imposter who applied for, received and used the credit card. This claim is without merit because the statute is criminal in nature and provides no private right of action. *See, e.g., Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F.Supp.2d 932, 937 (E.D.Va.1998) (holding that 18 U.S.C. § 1028 provides no private cause of action); *see also Vasile v. Dean Witter Reynolds, Inc.*, 20 F.Supp.2d 465, 477 (E.D.N.Y.1998) ("It is also a general precept of criminal law that unless the statute specifically authorizes a private right of action, none exists."). Moreover, the plaintiff has failed to set forth any basis establishing that Congress intended a private right of action under this statute. *See Suter v. Artist M.*, 503 U.S. 347, 363, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (stating that the party seeking to imply a private right of action bears the burden to show

that Congress intended to make one available). Thus, this claim is dismissed.

## C. The Claim for Aiding and Abetting Mail Fraud, 18 U.S.C. § 1341

■ Pursuant to 18 U.S.C. § 1341, the plaintiff claims that the defendant aided and abetted mail fraud, by mailing "fraudulent credit card to an address that they could not verify." It is well-established that there is no private right of action for mail fraud. *See Silva v. Neumel,* 152 F.3d 920, 1998 WL 398804 (2d Cir.1998) (affirming dismissal of claim for mail fraud because 18 U.S.C. § 1341 does not create a private right of action); *Pharr v. Evergreen Gardens, Inc.,* No. 03 Civ. 5520(HB), 2004 WL 42262, at *1 n. 2 (S.D.N.Y. Jan. 5, 2004), 2004 U.S. Dist. LEXIS 158, at *3 n. 2 (holding that "there is no private right of action for violations of the federal mail-fraud statute."); *Fitzgerald v. Pharmacia Corp.,* No. 01 Civ. 6974(NRB), 2002 WL 826824, at *2 n. 2 (S.D.N.Y. Apr. 29, 2002), 2002 U.S. Dist. LEXIS 7761, at *5 n. 2 ("There is no private right of action for mail fraud under 18 U.S.C. § 1341."). Because this statute does not provide a private right of action, Garay may not assert a claim for aiding and abetting pursuant to this statute. Therefore, this claim is dismissed.

## D. The Claim for Obstruction of Justice

■ The plaintiff claims that the defendant obstructed justice by refusing to furnish her or the police with documents relating to the account opened by the alleged imposter. Because obstruction of justice is a criminal matter, there is no private cause of action. *See Scientronic Corp. v. AT & T Incorp. Corp.,* No. 91 Civ. 1148, 1993 U.S. Dist. LEXIS 20456, at *11 (E.D.N.Y. May 24, 1993) (citing *United States ex rel. Farmer v. Kaufman,* 750 F.Supp. 106, 108 (S.D.N.Y.1990)); *see also Langella v. United States,* No. 01 Civ. 11583(AKH), 2002 WL 1218524 (S.D.N.Y. June 4, 2002), 2002 U.S. Dist. LEXIS 10039, at * (stating that obstruction of justice may be enforced only by the Department of Justice). As such this claim fails, as a matter of law, and is therefore dismissed.

## E. The Remaining State Law Claims

■ Garay also asserts a number of state law claims, including claims for negligence, "failure to provide due diligence," and "aiding and abetting in a conspiracy to commit conversion," and "invasion of privacy." At this stage of the case, because her federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over her remaining state law claims and need not consider the defendant's remaining arguments. *See Jinks v. Richland County,* 538 U.S. 456, ——, 123 S.Ct. 1667, 1669, 155 L.Ed.2d 631 (2003); *see also* 28 U.S.C. § 1367(c); *Marcus v. AT&T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.") (citing *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994)). Thus, the state law claims are dismissed without prejudice. Accordingly, the defendant's motion for summary judgment dismissing the complaint in its entirety is granted.

## F. Leave to Amend

■ When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002) (citing *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). Nevertheless, " '[f]utility' is a

valid reason for denying a motion to amend ... where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson,* 200 F.3d 65, 70–71 (2d Cir.1999) (citations omitted).

While the plaintiff does not seek leave to file an amended complaint, the Court assumes because of her *pro se* status that leave would be sought. However, even with the most liberal reading of the complaint, the Court finds that the complaint is completely devoid of any viable cause of action and any amendment would therefore be futile. Accordingly, the Court declines to grant leave to amend in this case.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that defendant's motion for summary judgment dismissing the complaint is **GRANTED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**