**GREEN VALLEY INVESTMENTS, LLC, Plaintiff–Appellant,**

v.

**WINNEBAGO COUNTY, WISCONSIN, Defendant–Appellee.**

No.  14–2473.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 2015.

Decided July 27, 2015.

 

Jeff Scott Olson, Attorney, Madison, WI, for Plaintiff–Appellant.

Charles H. Bohl, Attorney, Paul David Cranley, Attorney, Kurt M. Simatic, Attorney, Whyte Hirschboeck Dudek S.C., Milwaukee, WI, Madison, WI, for Defendant–Appellee.

Before WOOD, Chief Judge, and BAUER and RIPPLE, Circuit Judges.

WOOD, Chief Judge.

Stars Cabaret is a nude dancing establishment in Neenah, Wisconsin, which lies in Winnebago County. When Stars opened in 2006, the County had a zoning ordinance governing Adult Entertainment Overlay Districts. In order to operate legally, Stars's owner, Green Valley Investments, had to locate its cabaret within an area authorized by the zoning law. But the process was stalled at the outset because, as all parties agree, the 2006 ordinance violated the First Amendment. In an effort to reap a permanent benefit from that fact, Green Valley later sued in federal court for a declaration that its operation of Stars has been legal from the outset. Green Valley reasoned that anything is legal that is not forbidden, and its cabaret was banned only by an unconstitutional ordinance: ergo, it said, the cabaret was permitted in 2006 and now has become a legal nonconforming use that cannot be barred by a later ordinance. To drive the point home, Green Valley also brought a supplemental claim seeking a declaration under state law that the Stars Cabaret was a valid nonconforming use under state law.

The district court found this a little too much to buy, and so it granted summary judgment to the County. It did so on the understanding that it was possible to use the severance clause in the ordinance to strike its unconstitutional provisions. After doing so, the court thought, enough of

a regulatory scheme remained to support a finding that the cabaret was unlawful in 2006 when it opened, that it is still unlawful, and thus that it cannot take advantage of grandfathering.

We agree with the district court that the permissive use scheme laid out in the County's ordinance is unconstitutional. But we have serious reservations about the rest of its analysis. Once the constitutional problems with the County's law are dealt with, the core questions that remain are those of state law. Their resolution depends on facts that have not yet been developed, and on the possible existence of a power not only to sever problematic language but to revise it—a power we do not have. Under the circumstances, we conclude that the district court should have declined to exercise supplemental jurisdiction over the state-law claims; instead, it should have dismissed them without prejudice so that the parties may (if they wish) pursue them in state court. We therefore reverse to that extent.

## I

In 2006, when Stars opened for business, Winnebago County had on its books Town/County Zoning Ordinance 17.13, which required adult entertainment establishments to locate within "adult entertainment overlay [AEO] district[s]." An AEO district could be established only if the County issued a conditional-use permit to the would-be adult entertainment operator. The zoning committee responsible for this process would issue such a permit only if it found that the proposed use complied with several requirements, including that it would "not be a detriment to the public welfare" and "in no way [would] contribute to the deterioration of the surrounding neighborhood" or "have a harmful influence on children residing in or frequenting the area." The application also had to demonstrate (among other things) that no intoxicating beverages would be sold within the AEO district, and that any "adult use" within the district would be located at least 1500 feet from any other adult use and at least 2000 feet from land zoned residential or institutional. (This is the setback provision.)

The 2006 ordinance also stipulated that the proposed AEO district had to lie within "a B–3 Highway Business District." Unfortunately, however, at no point did it define what a "B–3 Highway Business District" is, even though it mentioned "Highway Business Uses." (The copy of the ordinance in the record includes some scribbled text above the printed text "Highway Business Uses" that we think says "Highway Bus Dist should include." But the parties have not given us any reason to believe that these scribbles were incorporated into the ordinance.)

Elsewhere in the County's general zoning law, there is a severability clause. It states that "[i]f any section, clause, provision, or portion of this Section is adjudged unconstitutional or invalid by a court of competent jurisdiction, the remainder of the Ordinance shall not be affected thereby."

Green Valley has never attempted to satisfy the requirements of Ordinance 17.13. It has never sought a permit to establish an AEO district encompassing its location. The Stars Cabaret openly features nude dancing and serves alcoholic beverages.

Green Valley sued the County in 2006 for declaratory and injunctive relief, alleging that Ordinance 17.13 was an unconstitutional restriction on expression. While that suit was pending, the County amended the ordinance, and Green Valley agreed to a dismissal without prejudice. (The legality of the 2006 ordinance was thus never resolved in that suit.) In 2008, Green Valley returned to federal court with a new suit challenging the constitutionality

of a 2007 amendment to the ordinance. At that point, the district court permanently enjoined the County from enforcing the provisions of the 2007 ordinance relating to conditional use permits, but it found that the remainder of the ordinance once the unconstitutional parts were severed could operate effectively on a standalone basis. Green Valley appealed to this court, but while the appeal was pending, Winnebago County again changed the ordinance. Believing that this mooted the appeal, Green Valley voluntarily dismissed it on June 1, 2012.

Just before it dismissed the appeal, Green Valley asked Winnebago County's corporation counsel, John Bodnar, to confirm that Stars would be able to continue operating as a nonconforming use. Bodnar did not respond until December 21, 2012, when he rejected that position on the theory that Stars had never been lawful and thus was subject to the ordinance as redrawn by the district court. Thus rebuffed, Green Valley brought a third action against the County in 2013. This time, it began with the proposition that the 2006 version of the ordinance violated the First Amendment. Since Stars had operated for some time before this invalid ordinance was modified, it argued that this use was lawful. Hence, it concluded, under state law it had achieved the status of a valid nonconforming use for purposes of the ordinance the county was then using (the 2006 ordinance as amended in 2007 and again in 2011). It sought a declaratory judgment that the 2006 ordinance violated the First Amendment in a variety of ways, and it raised a supplemental claim under state law for a declaration that under the new ordinance Green Valley's "use of the land as an adult cabaret was lawful in 2006 and is a valid nonconforming use now."

The County again moved for summary judgment, and the district court ruled in its favor. The court first concluded that it had subject-matter jurisdiction over the case—a topic it had to reach because it found it unclear whether Green Valley was seeking only a ruling on its state-law zoning question or whether it was raising a federal question about the constitutionality of the county's 2006 ordinance. It concluded that resolution of the federal constitutional question was required before the state-law issue could be reached. The court then decided that parts of the 2006 ordinance were unconstitutional but that they could be severed, leaving a constitutionally permissible law that, from the time before Stars opened, has regulated alcohol sales at adult establishments and established setback limitations on the location of such businesses. Since Stars has never complied with those requirements, its operation (the court reasoned) has never been lawful. This appeal followed.

## II

Although "[b]eing 'in a state of nudity' is not an inherently expressive condition," erotic nude dancing as practiced at Stars "is expressive conduct" located "within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). Prior restraints of ordinary expression "come[ ] to [the] Court bearing a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The Court may take a somewhat more lenient approach to nude-entertainment expression, see *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (upholding the enforcement of a public indecency law that required pasties and G-strings), but it still looks carefully for a valid justification for laws restricting these activities. In *Barnes,* for instance, the Court upheld the

challenged ordinance only after finding that it served a valid governmental interest, that it was narrowly tailored, that it had only a minimal restraint on expression, and that (as the Court put it, perhaps punning) "the bare minimum necessary to achieve the State's purpose." *Id.* at 572, 111 S.Ct. 2456. We conclude that the permitting system in the 2006 version of Ordinance 17.13 does not meet this test: it is a prior restraint prohibited by the First Amendment.

In *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court summarized the reasons why the law before it was an impermissible prior restraint:

> It will be noted, however, that the Act requires an application to the secretary of the public welfare council of the State; that he is empowered to determine whether the cause is a religious one, and that the issue of a certificate depends upon his affirmative action. If he finds that the cause is not that of religion, to solicit for it becomes a crime. He is not to issue a certificate as a matter of course. His decision to issue or refuse it involves appraisal of facts, the exercise of judgment, and the formation of an opinion.

*Id.* at 305, 60 S.Ct. 900, quoted with approval in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 554, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); see *Samuelson v. LaPorte Cmty. Sch. Corp.,* 526 F.3d 1046, 1051 (7th Cir.2008) (applying these factors). We have noted that "the case law on prior restraints is replete with decisions invalidating zoning ordinances, licensing schemes, permit regulations and other official acts that limit expressive activity." *Wernsing v. Thompson,* 423 F.3d 732, 747–48 (7th Cir.2005).

■ In this case, the 2006 law is a zoning ordinance and permitting scheme rolled up into one. But whatever the label, it unquestionably imposes a prior restraint. It requires applicants such as Green Valley to apply to the County for permission to undertake their selected mode of expression—nude dancing. The County's committee decides whether applicants receive permission to make their proposed communication based on the content of that communication. This requires the committee to review such amorphous points as whether the proposed use is "a detriment to the public welfare," or "will in no way contribute to the deterioration of the surrounding neighborhood," or "will not have a harmful influence on children" in the area. The ordinance leaves it to the County's discretion to decide yes or no on each of these criteria. Finally, the County must affirmatively grant permission for the use to occur. This is a quintessential prior restraint.

■ The question remains whether this prior restraint can escape condemnation by fitting into one of the narrow exceptions the Supreme Court has identified to the rule barring prior restraints. See *Stokes v. City of Madison,* 930 F.2d 1163, 1169 (7th Cir.1991). One possible exception is the presence of "a powerful overriding interest" such as national security, obscenity, or incitement to violence and overthrow of the government, *id.,* but these have nothing to do with our case. Another is whether the prior restraint "takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Southeastern Promotions,* 420 U.S. at 559, 95 S.Ct. 1239 (quotations omitted). The safeguards the Court has recognized include the imposition on the censor of the burden of instituting judicial proceedings; the limitation of the restraint to a brief period for the purpose of preserving the status quo pending judicial review; and the assurance of a prompt judicial determination. *FW/PBS, Inc. v. City of Dallas,*

493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (opinion of O'Connor, J.). The County's ordinance includes none of these safeguards. Nor can the ordinance be sandwiched into the exception for valid time, place, and manner restrictions, given the fact that a proposed adult use cannot occur at all under the ordinance without permission from the County to establish an AEO district for it.

In short, the permitting scheme set up in the 2006 ordinance creates an unconstitutional prior restraint and cannot be enforced.

## III

■ The district court acknowledged the County's concession that the permitting system is an unconstitutional prior restraint. But it agreed with the County that the severability clause applicable to the 2006 ordinance made it possible to strike the unconstitutional provisions from the ordinance and let a slightly amended version of the remainder stand on its own as a working law. In order to be left with something that makes sense, however, the district judge had to modify the language in some respects. After these changes (including changing the term "Adult Entertainment *District*" to "Adult Entertainment *Establishments*" in the alcohol provision), the judge was satisfied that two parts of the truncated ordinance could function without the permitting scheme: the clause establishing setbacks for the locations of adult establishments relative to other land uses, and the provision banning the use of alcohol within AEO districts.

From a legislative standpoint, these may have been sensible changes. But there is a preliminary state-law issue that must be faced: it is not clear as a matter of Wisconsin law that the power to sever includes the power to modify, nor is it clear whether what remains of an ordinance after severance can serve as a standalone law if modifications or additions are necessary. See *Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996) ("Severability is of course a matter of state law."). We do not know in this case whether, after severance, the Wisconsin courts would regard the remaining parts of the ordinance as a valid freestanding zoning provision. The parties have devoted most of their attention to this issue. We were treated to a lengthy discussion of the niceties of what constitutes a B–3 Highway Business District in Winnebago County and the difference between principal and conditional land uses under Wisconsin's precedents. This takes us very far afield from the First Amendment question that launched this case. "[F]ederal courts, as we have explained time and again, are not zoning boards of appeal." *CEnergy–Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014). Yet, with the First Amendment claim out of the way, that is the role the parties have asked us to undertake.

■ We are not saying that the zoning issues fall outside the district court's supplemental jurisdiction. The federal question and these state-law claims spring from a common nucleus of operative fact, as cases discussing 28 U.S.C. § 1367 have put it, see, *e.g.*, *Jinks v. Richland Cty.*, 538 U.S. 456, 463, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003), quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 718, 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and that is enough. But supplemental jurisdiction need not always be exercised, as § 1367(c) recognizes. A district court may relinquish supplemental jurisdiction for several reasons: the relation of the state claims to "a novel or complex issue of State law"; their predominance "over the claim or claims over which the district court has original jurisdiction"; or for "other com-

pelling reasons" in "exceptional circumstances." 28 U.S.C. § 1367(c)(1), (2), (4). We review a district court's decision to exercise supplemental jurisdiction for abuse of discretion. *Bailey v. City of Chicago,* 779 F.3d 689, 696 (7th Cir.2015).

■ In assessing that question, we bear in mind the Supreme Court's admonition that "zoning laws and their provisions, long considered essential to effective urban planning, are peculiarly within the province of state and local legislative authorities." *Warth v. Seldin,* 422 U.S. 490, 508 n. 18, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); see also *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 44, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). Here, there is no overriding federal-law question, such as the possibility of an unconstitutional taking, *e.g., Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), or preemption by another federal law, *e.g., City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003) (Fair Housing Act), that would override that principle.

The ability of a court to do more than excise the unconstitutional portions of the ordinance does not appear to us to be settled in Wisconsin. The parties have not, for example, pointed to a Wisconsin case that explicitly establishes a rule allowing or disallowing such a maneuver. Moreover, in our view the questions of state law that remain to be decided "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Whether the alcohol and setback parts of the County's zoning ordinance can be severed and function on their own is squarely within the scope of state law. It is also not clear that Wisconsin would regard a use that did not conform to a law that was later found to have constitutional problems as something that can be

grandfathered. The answers to these questions are not obvious. They touch on both the fundamental rules of land-use control and the way in which the state enforces the separation of powers between its legislature and judiciary. Furthermore, the resolution of these issues is hamstrung by a shallow record. The record sheds no light, for example, on the question whether there is such a thing in Winnebago County as a "B–3 Highway Business District," despite the fact that the ordinance requires adult uses to locate within such districts. And as the parties confirmed at oral argument, neither the district court nor we have a zoning map of Winnebago County to assist us. If this part of the case is returned to the Wisconsin courts, they will be able to address it within the broader context of Wisconsin's land-use law, and they will be able to develop an appropriate record.

The district court did not discuss the pros and cons of exercising supplemental jurisdiction. It acknowledged that "the ultimate problem is one of state law" and that the parties were "invoking federal jurisdiction to answer what are primarily state-law problems." It commented that it was "unclear from the complaint" whether Green Valley sought a ruling on its "state law question" or instead wanted "a declaration as to the federal constitutional question." It appears to us that the answer is "both." In the complaint, Green Valley asserts a "supplemental state claim" establishing that its "use of the land as an adult cabaret was lawful in 2006 and is a valid nonconforming use now" and asking for money damages to reimburse the expenses it incurred in part to settle this point. At the same time, Green Valley's request for declaratory relief states it is solely "[f]or the ongoing threat to its First Amendment rights"; it does not mention the state-law claim. The district court was also influenced by the view that the federal-law

issues served somehow as a predicate for the state-law issues. The only federal issue was whether the 2006 ordinance was unconstitutional in whole or in part. This was enough to avoid a finding that there was no predicate federal question at all, but this issue was not the focus of the litigation. The severance issue was. As the district court conceded, that is a question of Wisconsin law, as is the related question whether an ordinance containing solely the alcohol prohibition and the setback rules could function coherently.

We conclude that the district court, after confirming that the 2006 ordinance violated the federal constitution in some respects, should have relinquished its jurisdiction over the supplemental state claims and dismissed them without prejudice. We therefore REVERSE and REMAND for entry of such an order. Each party will bear its own costs on appeal.