# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 17-2381

———————————————

Cecelia Roberts Webb; Darron Yates; Robert Eutz; Anthony Lemicy; Krystal Banks; Frank Williams, individually and on behalf of all others similarly situated.

*Plaintiffs - Appellees*

v.

City of Maplewood

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: April 12, 2018
Filed: May 4, 2018

——————————

Before COLLOTON, ARNOLD, and SHEPHERD, Circuit Judges.

——————————

ARNOLD, Circuit Judge.

Cecelia Webb and five other motorists have filed a putative class action against the City of Maplewood, Missouri, under 42 U.S.C. § 1983, claiming its policy or custom violates their constitutional rights. They assert the City automatically issues an arrest warrant whenever someone ticketed for violating its traffic and vehicle laws fails to pay a fine or appear in court. Once arrested, the motorist is allegedly presented

with a Hobson's choice: Either pay a bond the amount of which was set in advance without any determination of his ability to pay it, or sit in jail possibly for days. The plaintiffs further contend that once a warrant has been issued, a motorist cannot avoid it by voluntarily returning to the municipal court or paying the outstanding fine, but must either submit to a custodial arrest or retain a lawyer to argue a motion before the municipal judge to vacate the warrant. If the court does not grant the motion, the motorist, whose presence in court the judge allegedly demands, will be arrested and jailed. Jail, the plaintiffs assert, is the means by which the City attempts to coerce the motorist into paying the bond to secure his release. The complaint indicates that the City's policy or custom involves additional steps that can ensnare motorists in repeated cycles of arrest, jailing, and pressure to pay a bond irrespective of their ability to do so. The plaintiffs maintain that since their poverty makes it difficult if not impossible to pay the bond, the City thereby violates, among other things, their due-process and equal-protection rights.

The City moved the district court[1] to dismiss the complaint on several grounds, including that the City is immune from suit and that the complaint fails to state a claim against the City. The district court dismissed a single count from the complaint on the consent of both parties but otherwise denied the motion, ruling that the City is not immune from suit and that the complaint sufficiently states a claim of municipal liability. The City appeals from the order denying it immunity, and we affirm.

We review a district court's decision about whether a party is immune from suit de novo. *See Sample v. City of Woodbury*, 836 F.3d 913, 915–16 (8th Cir. 2016); *Balogh v. Lombardi*, 816 F.3d 536, 544 (8th Cir. 2016). The City argues that it enjoys immunity for two reasons: first, under the Eleventh Amendment since the municipal court, which is an arm of the State of Missouri, is responsible for most of the disputed

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

practices and is thus the real party in interest here; and second, because the absolute immunity of the responsible officials renders the City immune as well. The City is wrong in both respects.

The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court, *N. Ins. Co. v. Chatham Cty.*, 547 U.S. 189, 193 (2006), and the State of Missouri has not waived its sovereign immunity for the type of claim the plaintiffs have raised. *See* Mo. Rev. Stat. § 537.600.1; *see also Williams v. State*, 973 F.2d 599, 600 (8th Cir. 1992) (per curiam). But "municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." *Jinks v. Richland Cty.*, 538 U.S. 456, 466 (2003). So the district court correctly held that the City is liable for its constitutional violations under 42 U.S.C. § 1983. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

The City nonetheless insists that it enjoys Eleventh Amendment immunity since "the real party in interest" is the municipal court, "an arm of the state entitled to sovereign immunity." But we use the real-party-in-interest test only to determine whether suits against a State's "arm or instrumentality" or "employees in their official capacity" are "in essence against [the] State." *See Lewis v. Clarke*, 137 S. Ct. 1285, 1291–92 (2017). As the City conceded at oral argument, it cannot identify a single case that has used the test to find that a municipality itself had immunity. We believe the reason is clear: The Supreme Court "has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'" *See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979).

In any event, in arguing for sovereign immunity, the City does not contend that it enacted or maintains the contested practices as an arm of the State, but that virtually all of the practices revolve around the municipal court, a separate and distinct entity over which it disclaims any control, and it is the court that is the arm of the State. But

if the municipal court rather than the City is responsible for the practices, the City will have a defense on the merits but not immunity from suit. *Cf. Leatherman*, 507 U.S. at 166. Even if the court were entitled to immunity—an issue we do not opine on—that immunity would not shield the City from its separate liability if any.

The City argues that it is also immune from suit since all of the individuals the complaint identifies as participating in the contested practices are personally immune from suit. "[I]f individual officials are immune from liability on the acts that allegedly constitute a municipality's policy or custom," the City asserts, "there are no unlawful acts which may form an unlawful policy or custom in the first place, precluding municipal liability." But even if we accepted the City's premise that its officials all enjoy personal immunity from suit, it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well. Whether the challenged acts occurred, whether they were unlawful, and whether the City is liable for them under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), would still be open questions. *See Owen v. City of Independence*, 445 U.S. 622, 657 (1980); *see also Sample*, 836 F.3d at 917. We have long held for that reason that a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom. *See Praprotnik v. City of St. Louis*, 798 F.2d 1168, 1172 n.3 (8th Cir. 1986), *rev'd on other grounds*, 485 U.S. 112 (1988); *see also Speer v. City of Wynne*, 276 F.3d 980, 985–86 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992). The district court did not err in denying the City immunity on this ground, either.

We have not always been as clear as we could have in discussing the relationship between individual and municipal liability. As the City notes, we have stated in the past that it is "a general rule" that "for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). But in *McCoy* we used that language to explain why a city could not be held liable "on either an

-4-

unconstitutional policy or custom theory or on a failure to train or supervise theory" once it has been determined that the underlying official conduct was "objectively reasonable" and thus did not violate the plaintiff's rights. *See id.* In *McCoy* we cited six cases that allegedly applied the "general rule"; in five of them we simply held that because the challenged official conduct was not unconstitutional, the municipality had nothing to be liable for. *See McVay v. Sisters of Mercy Health Sys.*, 399 F.3d 904, 909 (8th Cir. 2005); *Turpin v. Cty. of Rock*, 262 F.3d 779, 783–84 (8th Cir. 2001); *Veneklase v. City of Fargo*, 248 F.3d 738, 749 (8th Cir. 2001) (en banc); *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000); *Eagle v. Morgan*, 88 F.3d 620, 628 (8th Cir. 1996). In the sixth case, we reversed a district court's ruling that official conduct was unconstitutional as a matter of law and remanded the case for a new trial. Since there no longer was a finding that the conduct was unlawful, we also reversed the district court's ruling that the city was liable for it. *See Abbott v. City of Crocker*, 30 F.3d 994, 998–99 (8th Cir. 1994).

The City contends we gave full effect to the "general rule" in *McCoy* when we stated in *Patterson v. Von Riesen*, 999 F.2d 1235 (8th Cir. 1993), that in order to hold a municipality liable for its unconstitutional policy, a plaintiff "must be able to attach liability to the decision in question," which, we further stated, could not happen if the municipal policymakers had "absolute" immunity from suit. *See id.* at 1238 n.2. We acknowledged that the Supreme Court had established that a city could still be held liable under *Monell* where "the individual municipal officials were all immune," *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 475 (1986), but we distinguished that case on the ground that the policymaker in *Pembaur* did not engage "in a function protected by absolute immunity," while those in *Patterson* did. *See* 999 F.2d at 1238 n.2. We did not explain why that distinction made a difference, and it did not make one to the Supreme Court: The policymaker in *Pembaur* was the County Prosecutor, and the plaintiff did not sue him having determined he was "absolutely immune" from suit—an evaluation the Court expressed "no view" on. *See Pembaur*, 475 U.S. at 474 n.2, 485. The distinction in any event was flawed. As the Supreme Court commented

in *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), although a municipality's legislators are all absolutely immune from suit for their legislative activities, the victims of their "legislative abuse" are not without recourse since under *Monell* the municipality itself can still "be held liable for constitutional violations." *See id.* at 53. So it is now clear that the absolute immunity of its policymakers does not shield a city from liability for its policies. *See McDonough v. Anoka Cty.*, 799 F.3d 931, 941–42 (8th Cir. 2015). We have indicated, moreover, that our statements in *Patterson* on absolute immunity and *Monell* liability were dicta: Since the plaintiff had "claimed only that [the county] was liable because of its 'authorization and ratification . . . of the acts of its agents,'" *see Patterson*, 999 F.2d at 1238 n.2., we "relied on a *respondeat superior* theory to find the county not liable." *See Sample*, 836 F.3d at 917 n.3. Our musings on whether the county could have been held liable under *Monell* instead were thus not binding.

So despite our occasional use of overbroad language, our case law has been clear since *Praprotnik* that although "there must be an unconstitutional act by a municipal employee" before a municipality can be held liable, *see Russell v. Hennepin Cty.*, 420 F.3d 841, 846 (8th Cir. 2005), there "need not be a finding that a municipal employee is liable in his or her individual capacity." *See Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009). The City's contrary rule conflicts not only with our longstanding precedent, *see Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc), but with one of the Supreme Court's reasons for denying municipalities immunity under § 1983: The need to provide "victims of municipal malfeasance" with a remedy, especially since the officials responsible for the injury may enjoy personal immunity from suit. *See Owen*, 445 U.S. at 651, 657.

At oral argument, the City raised for the first time its concern that if the City is not granted immunity, the plaintiffs may use this suit to obtain discovery from the State of Missouri and its officials. We normally do not consider issues raised for the first time at oral argument, *Bennie v. Munn*, 822 F.3d 392, 398 n.3 (8th Cir. 2016), but will observe that any State official or entity the plaintiffs subpoena for discovery

may raise a claim of sovereign immunity at that time. *See Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1104–05 (8th Cir. 2012). The district court may address in the first instance whether the subpoena can be quashed on that ground.

The City maintains finally that we may exercise pendent appellate jurisdiction over the district court's order declining to dismiss the complaint on the basis of the insufficiency of its allegations of municipal liability. Unlike the district court's denial of the City's defense of immunity, the question of whether the complaint states a claim of municipal liability cannot normally be reviewed on interlocutory appeal. *See Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). We may review that issue only if it is "coterminous with, or subsumed in," the issue of the City's immunity from suit. *Manning v. Cotton*, 862 F.3d 663, 671 (8th Cir. 2017). The issues are not inextricably intertwined here, however, since we have determined that the district court correctly denied the City immunity without having found it necessary to decide whether the complaint sufficiently pleads the City's *Monell* liability. *See id*. Since the issues are separate, we do not have jurisdiction to review whether the complaint states a claim of municipal liability, and we express no view on that question.

Affirmed.

_____